Wade WILLIAMS, III, Respondent,

v.

William Dean WILLIAMS and Rebecca
Williams, Appellants.

No. WD 60663.

Missouri Court of Appeals,
Western District.

March 25, 2003.

Fletcher A. Speck, Kansas City, MO, for appellants.

Dennis J. Campbell Owens, Kansas City, MO, for respondent.

Before JOSEPH M. ELLIS, C.J., VICTOR C. HOWARD, Judge and LISA WHITE HARDWICK, Judge.

JOSEPH M. ELLIS, Chief Judge.

Appellants William Dean Williams and Rebecca Williams appeal from judgments entered in the associate division of the circuit court of Jackson County in favor of Respondent Wade Williams III.

Prior to June 27, 2000, William Dean Williams ("Dean") and his parents, Wade Williams, Jr. and Mary Williams, owned a home located at 9840 Wornall Road in Kansas City, Missouri. The home was subject to a mortgage in their names. As of June 27, 2000, Dean was living in the house along with one or two tenants who were paying him rent.

On June 27, 2000, Dean and his parents agreed to sell the home to Wade Williams III ("Wade") and executed a written sales agreement to that effect. That agreement provided that Wade would make four payments to the sellers totaling $12,500.00 and would take over the mortgage in the amount of $66,500.00 as of September 1, 2000. The payments to the sellers were to be made on June 27, August 1, September 1, and October 1. The agreement stated that Wade would take over the utilities and insurance as of September 1, 2000, as long as the sellers had vacated the premises. In the event that the sellers had not vacated the premises by September 1, the sales agreement stated that the sellers would pay rent in the amount of the house payments along with paying the utilities, taxes, and insurance for the property. The agreement also provided that the sellers would give Wade access to the property as of June 27, 2000, for the "removal of a wall and debris and access to storage." In addition, the parties agreed "to execute any and all future instruments necessary to facilitate the transfer of ownership."

In conjunction with the sales agreement, Wade issued a check to the sellers made out to all three of them. Dean took the check to the bank, cashed it, and refused

to give any of the money to his parents. Following that incident, Wade Williams, Jr. asked Wade to make the mortgage payments that were due in July and August and deduct those payments from the amount owed under the sales agreement. Wade Williams, Jr. also asked Wade to make his payments to the sellers in the form of two separate checks to Dean and Wade Williams, Jr.

On June 28, 2000, Dean had an extra set of keys to the house made and gave them to Wade. Subsequently, during the first two weeks of July, Wade had some work and cleaning done at the house. Sometime between July 12 and July 19, Dean had the locks on the house changed to prevent Wade from having further access to the house.

As of September 1, 2000, Dean was still occupying the property along with his tenants. Early in September 2000, Wade Williams, Jr. and Mary Williams appeared for the closing appointment at Security Land Title and signed the quit claim deed for the property. Dean failed to show up for that appointment. Subsequently, Dean failed to show up at another appointment later in the month. On at least two occasions, either through e-mail or verbally, Dean told Wade that he would execute the quit claim deed, but subsequently failed to do so.

Dean continued to retain possession of the home up until the time of trial. During that period of time, he did not pay any rent to Wade, and Wade paid the taxes and insurance for the property. In addition, at the time the sales agreement was entered into, one of the rooms in the house had five nautical brass portholes installed in the walls. At some point after June 27, 2000, Dean ripped the portholes out and sold them.

After Dean had still not relinquished possession of the house or executed the quit claim deed, in early 2001, Wade filed a petition against Dean and his wife, Rebecca Williams, in the Circuit Court of Jackson County. In the first count, Wade alleged that Dean had breached the contract by failing to execute the quit claim deed. In his second count, Wade claimed that Dean had breached the contractual provision requiring him to pay rent, utilities, taxes, and insurance on the property if he had not vacated the premises by September 1, 2000. In the third count, Wade asked the court for its order quieting title to the property and to order Dean to execute the quit claim deed. Wade's fourth count alleged fraudulent misrepresentation on the part of Dean in repeatedly representing that he would execute a quit claim deed to the property and then failing to do so; Wade asked the court to award both actual and punitive damages on this count. In his final count, Wade asserted a claim of unjust enrichment against Mrs. Williams, alleging that she had stored a vehicle and other personal property in the house without his permission and that her failure to pay him rent was inequitable.

The case was tried to the court on September 27, 2001. On October 3, 2001, the trial court entered its judgment in favor of Respondent on all counts. On Counts I and II, the trial court entered a judgment against Dean for $16,417.00 in actual damages. The trial court, on Count III, ordered Dean to execute a quit claim deed and surrender possession of the property by October 8, 2001, and the court entered its order quieting title to the property in favor of Respondent. On Count IV, the fraudulent representation claim, the trial court entered a judgment against Dean for $10,000.00 in punitive damages, but awarded no actual damages. In regard to the fifth count, the trial court entered a judgment against Mrs. Williams for $3,850.00 in actual damages and ordered her to re-

move any and all personal property she had at the house by October 8, 2001. The trial court did not include any findings of fact or conclusions of law in its judgment. Appellant brings seven points on appeal from the trial court's judgment.

 "In reviewing court-tried civil cases, this Court applies the standard set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.1976), that 'the decree or judgment of the trial court will be sustained ... unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law.'" *H.S. v. Board of Regents, Southeast Mo. State Univ.,* 967 S.W.2d 665, 668 (Mo.App. E.D.1998). "Where, as here, the trial court makes no findings of fact, this court considers all fact issues to have been found in accordance with the result reached." *Delgado v. Mitchell,* 55 S.W.3d 508, 512 (Mo.App. S.D. 2001). Accordingly, we view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the prevailing party, *Walker v. Hanke,* 992 S.W.2d 925, 930 (Mo.App. W.D.1999), and must give due regard to the trial court's credibility determinations. *Chesus v. Watts,* 967 S.W.2d 97, 105 (Mo.App. W.D. 1998). We will "uphold the judgment of the trial court under any reasonable theory pleaded and supported by the evidence." *H.S.,* 967 S.W.2d at 668.

In the first point, Dean asserts that the evidence was insufficient to support the trial court's punitive damages award on the fraudulent misrepresentation count be-cause Respondent failed to prove by clear and convincing evidence that Dean did not intend to convey the property to Respondent at the time the sales contract was signed. Because of our disposition of Dean's second point, we need not address his contention in point I.

 In his second point on appeal, Dean claims that the trial court erred as a matter of law in awarding punitive damages on the fraudulent misrepresentation count because the trial court did not award any actual damages on that count. Missouri follows the general rule that no punitive damages can be awarded absent an award of actual or nominal damages. *See Compton v. Williams Bros. Pipeline Co.,* 499 S.W.2d 795, 797 (Mo.1973); *Koenig v. Skaggs,* 400 S.W.2d 63, 68 (Mo.1966); *Jacobs v. Bonser,* 46 S.W.3d 41, 47 (Mo.App. E.D.2001); *Cooper v. Bluff City Mobile Home Sales, Inc.,* 78 S.W.3d 157, 168 (Mo. App. S.D.2002); *State ex rel. Newman v. O'Malley,* 54 S.W.3d 695, 698 (Mo.App. W.D.2001); *Misischia v. St. John's Mercy Med. Ctr.,* 30 S.W.3d 848, 866 (Mo.App. E.D.2000); *Boshers v. Humane Soc'y of Mo., Inc.,* 929 S.W.2d 250, 256 (Mo.App. S.D.1996). Because actual damages are a necessary element of a cause of action for fraudulent misrepresentation, a finding of nominal damages is not sufficient to support a punitive damage award based on that cause of action, and an award of actual damages is required.[1] *MLJ Investments, Inc. v. Reid,* 905 S.W.2d 900, 901–02 (Mo.App. E.D.1995). Accordingly, the trial court could not properly award puni-

---

1. Nominal damages are sufficient to support a punitive damages award only in actions for trespass, assault, false imprisonment and other direct injuries where a plaintiff has a valid claim for at least nominal damages even if suffering no pecuniary harm. *MLJ Investments, Inc. v. Reid,* 905 S.W.2d 900, 902 (Mo. App. E.D.1995); *O'Brien v. Mobil Oil Corp.,* 749 S.W.2d 457, 459 (Mo.App. E.D.1988) (Satz, J., concurring). "There is no question that punitive damages cannot be assessed without the recovery of actual damages, if actual damages are an element of the plaintiff's claim." *O'Brien,* 749 S.W.2d at 459 (Satz, J., concurring) (citing *Carter v. Parr,* 634 S.W.2d 211, 214 (Mo.App. E.D.1982)).

tive damages on Respondent's fraudulent misrepresentation count absent an award of actual damages.

The trial court specifically entered a $16,417.00 judgment of actual damages on Respondent's first two counts but did not award any actual damages related to Respondent's fraudulent misrepresentation claim, Count IV. Since the trial court did not award any actual damages on Respondent's fraudulent misrepresentation count, there was no basis for an award of punitive damages, and the trial court committed reversible error in entering such an award. *Cooper*, 78 S.W.3d at 168. Accordingly, the trial court's award of punitive damages on the fraudulent misrepresentation count must be reversed.

In the third point on appeal, Dean contends that the trial court's award of $16,417.00 to Respondent is excessive and unsupported by the evidence. Dean argues that the award is well in excess of the evidence of damages presented by Respondent at trial.

■ Under our standard of review, we must affirm the trial court's award of damages unless it is not supported by the evidence, is against the weight of the evidence, or it is based upon an erroneous application of the law. *Buttress v. Taylor*, 62 S.W.3d 672, 678 (Mo.App. W.D.2001). The trial court's findings related to actual damages are entitled to great weight on appeal and will not be disturbed unless the damages awarded are clearly wrong, could not have been reasonably determined, or were excessive. *Montrose Sav. Bank v. Landers*, 675 S.W.2d 668, 672 (Mo.App. W.D.1984). "[I]f an award of damages is within the range of the evidence, an award of a particular amount may be considered responsive even though it does not correspond precisely with the amount claimed." *Payne v. Payne*, 728 S.W.2d 635, 640 (Mo. App. S.D.1987).

■ "[A] party claiming damages for breach of contract bears 'the burden of proving the existence and amount of damages with reasonable certainty.' " *Delgado*, 55 S.W.3d at 512 (quoting *American Laminates, Inc. v. J.S. Latta Co.*, 980 S.W.2d 12, 23 (Mo.App. W.D.1998)). Dean contends that the trial court's award was excessive in that it exceeded the amount of damages that could have been supported by the evidence presented at trial.

The contract between the parties provided that, if the sellers had not vacated the premises by September 1, 2000, the sellers would pay rent in the amount of the house payment along with the utilities, taxes, and insurance on the house. The evidence clearly reflects that Dean did not vacate the premises and did not pay the rent provided for in the contract to Respondent at any time. Respondent testified that he deducted the rent payments owed prior to November 2000 from the amounts he paid to the sellers under the contract along with tax and insurance payments due during that period. In his petition and at trial, Respondent asked the court for rent in the amount of the house payments, $432.66 per month, for the period starting in November 2000. Respondent also presented evidence that he had paid $110.00 per month in taxes and $56.00 per month for insurance on the property without reimbursement from the sellers starting in November 2000. The evidence reflected that Dean did pay for the utilities on the house. Accordingly, under the terms of the contract, Respondent was owed $598.66 per month for the twelve months from November 2000 through October 2001 when the judgment was entered, for a total of $7,183.92. Respondent also presented evidence that it would cost $4,575.40 to replace the portholes that had been removed by Dean subsequent to the execution of

the sales agreement. The sum of those two amounts is $11,759.32.

 On appeal, Respondent contends that the trial court's award of actual damages was supported by the evidence, but his first amended petition did not allege any damages aside from those already set out, *supra*, and he has not identified any further evidence of damages contained in the record. Likewise, our review of the record has not uncovered any evidence of additional actual damages.

[12] The purpose of damages awarded in a contract action is to restore the plaintiff to the position he or she would have been in if the defendant had not breached the contract, and, therefore, "the goal 'is to award a sum that will put the non-breaching party in as good a position as he would have been had the contract been performed.'" *McLane v. Wal–Mart Stores, Inc.*, 10 S.W.3d 602, 605 (Mo.App. E.D. 2000) (quoting *Hernandez v. Westoak Realty & Inv., Inc.*, 771 S.W.2d 876, 880 (Mo.App. E.D.1989)). The evidence presented at trial and the terms of the contract established that, in order for Respondent to receive the benefit of the contract, he would need to receive $11,759.32 in payments provided for in the contract (plus accrued interest from the time each of the payments came due), as well as title to, and possession of, the real property. The trial court awarded him title to the property, possession of the property, and $16,417.00. The trial court's award of $16,417.00 in actual damages for breach of contract clearly exceeds the $11,759.32 plus interest in damages established by the evidence by a significant amount. The trial court's award exceeded the range of damages established by the evidence and is not supported by substantial evidence.

Consequently, the trial court's award of $16,417.00 in actual damages on the breach of contract counts is reversed, and the cause is remanded to the trial court to enter judgment in the amount of $11,759.32 on those counts plus interest calculated from the date each payment became due.

In his fourth point, Dean contends the trial court erred in including damages for the removal of the brass portholes in its award of actual damages because Respondent failed to present sufficient competent evidence from which to assess the value of the portholes and the cost of replacing them. Dean argues that the trial court should not have afforded any weight to the testimony of Respondent's expert witness that he estimated the cost of the necessary repairs to be $4,575.40.

Respondent's witness, Don Kite, was a construction contractor who had owned hundreds of portholes over the years and was experienced in their installation. He testified that he had originally installed the portholes that Dean had had removed in the basement. Mr. Kite testified that he had provided Respondent with a written estimate that it would cost approximately $4,575.40 to replace the portholes that had been removed from the walls and to repair the damage.

 Dean's primary complaint with this testimony is that the contractor testified on cross-examination that he had called up a porthole dealer to verify what replacement portholes would cost at current market prices. Dean argues that Mr. Kite's testimony related to the estimated cost of repairing the room therefore constituted improper opinion testimony based on hearsay from the porthole dealer and did not provide any competent evidence to support the inclusion of any damages for the portholes in the trial court's award.

Appellant did not challenge the admission of Mr. Kite's written construction estimate as to the cost of repairs either at

trial or on appeal. That estimate alone constituted sufficient evidence of the cost of replacing the portholes and repairing the damage caused by their removal for the trial court to include such damages in its award. Moreover, on appeal, Appellant does not challenge the admission of Mr. Kite's testimony into evidence and instead merely argues that it was not competent to establish the value of the portholes that were removed. Mr. Kite's direct examination testimony was that his estimate included $3,750.00 for the portholes and $825.40 for labor and other materials. That testimony was admitted without objection, and those amounts were also reflected in the written estimate submitted into evidence. This evidence was sufficient to support a determination by the trial court as to the cost of repairing the damage caused by Dean's removal of the portholes subsequent to the execution of the sales agreement. Point denied.

In Appellants' fifth point, Dean contends that the trial court erred in allowing Respondent to amend the pleadings in his petition after the commencement of trial to include damages related to the removal of the portholes and in allowing Dean to present evidence related those damages.

"Rule 55.33 provides that leave to amend 'shall be freely given when justice so requires.'" *Lay v. P & G Health Care, Inc.*, 37 S.W.3d 310, 327 (Mo.App. W.D. 2000). "'The decision of the trial court to allow an amendment of a pleading after trial has commenced is a discretionary matter which we will not overturn unless that discretion has been clearly abused.'" *Id.* (quoting *Marvin E. Nieberg Real Estate Co. v. Taylor–Morley–Simon, Inc.*, 867 S.W.2d 618, 625 (Mo.App. E.D.1993)).

At trial, after Appellants attempted to make an *in limine* motion to exclude evidence of damages related to the removal of the portholes because those damages were not specifically alleged in the peti-

tion, Respondent requested leave of the court to amend his claim to include damages related to the portholes. Appellants objected to such an amendment. The trial court then inquired as to whether Appellants had any notice that those damages might be raised. The court was informed that those damages were not discovered by the Respondent until after the amended petition was filed and that Dean had been questioned about the removal of the portholes and their value during his deposition. The trial court then overruled Appellants' objection to the testimony related to the portholes and implicitly allowed Respondent's petition to be amended to conform to that evidence. We do not find that the trial court clearly abused its discretion in allowing the pleadings to be amended to include those damages where it was satisfied that Appellants were not unfairly surprised by that claim of damages or in allowing the admission of testimony to support those damages. *See Sanders v. Hartville Milling Co.*, 14 S.W.3d 188, 213 (Mo. App. S.D.2000). Point denied.

In their sixth point, Appellants contend that the trial court exceeded its jurisdiction in ordering Dean to execute a deed, ordering him to surrender possession of the premises, and in ordering Mrs. Williams to remove any personal property belonging to her on the premises. Appellants argue that these were forms of injunctive relief and that, as an associate circuit judge, the trial judge did not have any jurisdiction to grant injunctive relief. Appellants argue that § 526.020 precludes an associate circuit court from granting such relief unless specifically assigned or transferred to hear the case or unless evidence is presented establishing that no circuit judge is present in the county.

Appellants do not cite any authority to support their contention that the relief provided by the trial court constituted "injunctive relief."

Since the purpose of an injunction is not to afford a remedy for what is past but to prevent future mischief, not being used for the purpose of punishment or to compel persons to do right but merely to prevent them from doing wrong, rights already lost and wrongs already perpetrated cannot be corrected by injunction, and the party aggrieved must seek some other remedy for redress....

*Metts v. City of Pine Lawn*, 84 S.W.3d 106, 109 (Mo.App. E.D.2002) (quoting *Fugel v. Becker*, 2 S.W.2d 743 (Mo.1928)) (internal quotations omitted).

■ In his petition, Respondent sought relief for Dean's breach of the sales contract in the form of the equitable remedy of specific performance. The orders of the trial court related to the execution of the deed and the surrender of the premises by Dean were orders granting Respondent's request for specific performance of the contract. The trial court's orders served to remedy a past wrong resulting from Dean's breach of the sales contract and were not injunctive in nature. In this case, the combination of the damages award and equitable relief in the form of specific performance were properly combined to provide Respondent with an adequate remedy for Dean's breach of contract. *See Home Shopping Club, Inc. v. Roberts Broad. Co.*, 989 S.W.2d 174, 180 (Mo.App. E.D.1998). The trial court's ordering of Mrs. Williams to remove any of her property from the premises served a similar purpose.

The trial court's orders were not injunctive in nature. Point denied.

■ In the final point on appeal, Appellant Rebecca Williams challenges the trial court's award of $3,850.00 against her on Wade's claim of unjust enrichment. Mrs. Williams argues that the record did not contain sufficient evidence from which the trial court could ascertain what, if any, of her property was stored on the premises, how long it was there, or what the reasonable value of the storage of these uncertain items was. Mrs. Williams further claims that any damages on this count were duplicative of the trial court's judgment against Dean for the rent specified in the contract.

The evidence presented at trial on the unjust enrichment claim was exceedingly sparse. Wade testified that he went into the house a month before trial and found more clutter inside than had been there when he bought the house. When asked whose items they were, he testified, "Well, it looks like they're probably my brother's and his wife's."[2] The only other evidence of any of Mrs. Williams' property being on the premises after September 1, 2000, came from Dean. Dean testified that his wife loaned her second car to one of the tenants for a period of two to three weeks during which time the car might have been parked in the garage at the house.

The evidence submitted was wholly insufficient to support the trial court's award. Respondent's testimony that he thought some of the "clutter" in the house probably belonged to Dean and/or Mrs. Williams does not establish by a preponderance of the evidence that Mrs. Williams had anything stored in the house. Consequently, the trial court's judgment of unjust enrichment against Mrs. Williams is not supported by the evidence.

Furthermore, even if the evidence were deemed sufficient to establish that Mrs.

---

**2.** Wade also testified that prior to June 27, 2000, he had been at the house after Dean's fiance' had brought over some items to sell in a garage sale they were going to have there.

He testified that he did not know which items belonged to her as opposed to Dean or the other two tenants.

Williams had some personal property on the premises at some point, the evidence presented does not provide any basis from which the court could assess a value for such storage.[3] "To be sustainable on appeal, a damage award must be based on more than 'a gossamer web of shimmering speculation and finely-spun theory.'" *Delgado*, 55 S.W.3d at 512 (quoting *Carmel Energy Inc. v. Fritter*, 827 S.W.2d 780, 783 (Mo.App. W.D.1992)). None of the evidence establishes what, if any, property Mrs. Williams stored on the premises after September 1, 2000; how long it was there; or what the value of such storage would be.

Therefore, the trial court's award of $3,850.00 in damages against Mrs. Williams must be reversed. Point granted.

The trial court's judgment awarding Respondent $10,000.00 in punitive damages against Appellant William Dean Williams on Count IV, and the trial court's judgment awarding Respondent $3,850.00 in damages against Appellant Rebecca Williams on Count V, are hereby reversed. The trial court's judgment awarding Respondent $16,417.00 in damages against Appellant William Dean Williams on Counts I and II is reversed, and the cause is remanded to the trial court with instructions to enter judgment in the amount of $11,759.32 on those counts plus interest calculated from the date each payment became due. In all other respects, the judgment of the trial court is affirmed.

All concur.

---

**3.** Mrs. Williams also correctly points out that, to the extent that the trial court's judgment of actual damages against her husband included the unpaid rent for the property prescribed by the contract, any award against her for the storage of their property at the house would be duplicative of the award of rent.