# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-3538

_____

Brian Knowlton, individually, and On Behalf of All Others Similarly Situated;
Douglas Minerd, individually, and On Behalf of All Others Similarly Situated;
Gary Lensenmayer, individually, and On Behalf of All Others Similarly Situated;
Charles R. Wetesnik, individually, and On Behalf of All Others Similarly Situated;
Nancy J. Anderson; Richard F. Angevine; Joe Mullins; Andy Fichthorn; Donald
W. Mills, Jr.

*Plaintiffs - Appellees*

v.

Anheuser-Busch Companies Pension Plan; Anheuser-Busch Companies, LLC;
Anheuser-Busch Companies Pension Plan Appeals Committee; Anheuser-Busch
Companies Pension Plan Administrative Committee

*Defendants - Appellants*

_____

No. 15-3851

_____

Brian Knowlton, individually, and On Behalf of All Others Similarly Situated;
Douglas Minerd, individually, and On Behalf of All Others Similarly Situated;
Gary Lensenmayer, individually, and On Behalf of All Others Similarly Situated;
Charles R. Wetesnik, individually, and On Behalf of All Others Similarly Situated;
Nancy J. Anderson; Richard F. Angevine; Joe Mullins; Andy Fichthorn; Donald
W. Mills, Jr.

*Plaintiffs - Appellants*

v.

Anheuser-Busch Companies Pension Plan; Anheuser-Busch Companies, LLC;
Anheuser-Busch Companies Pension Plan Appeals Committee; Anheuser-Busch
Companies Pension Plan Administrative Committee

*Defendants - Appellees*

_____

Appeals from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: September 22, 2016
Filed: February 22, 2017

_____

Before RILEY, Chief Judge, MURPHY and SMITH, Circuit Judges.

_____

RILEY, Chief Judge.

Brian Knowlton and eight other named plaintiffs, individually and on behalf
of those similarly situated, brought this class-action lawsuit under the Employee
Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001, et seq., against
Anheuser-Busch Companies, LLC, Anheuser-Busch Companies Pension Plan,
Anheuser-Busch Companies Pension Plan Appeals Committee, and Anheuser-Busch
Companies Pension Plan Administrative Committee (collectively, Anheuser-Busch).
Plaintiffs, participants in the Anheuser-Busch salaried employee pension plan, claim
they are entitled to enhanced pension benefits. See id. § 1132(a)(1)(B). This appeal
concerns the interpretation of Section 19.11(f) of that plan. Adopting the reasoning
of the Court of Appeals for the Sixth Circuit in Adams v. Anheuser-Busch Cos., 758
F.3d 743 (6th Cir. 2014), the district court concluded Section 19.11(f) applied,

entitling plaintiffs to enhanced benefits, and granted judgment on the pleadings. We affirm in part and reverse in part.

## I.    BACKGROUND

Plaintiffs are former salaried employees of Busch Entertainment Corporation (BEC), a subsidiary of Anheuser-Busch Companies LLC, which ran SeaWorld theme parks. As a subsidiary, BEC was a member of the Anheuser-Busch family of companies, defined under the plan as the "Controlled Group"—the "group of corporations, trades and businesses . . . of which the Company [Anheuser-Busch Companies] is a part, as determined from time to time."

In November 2008, Anheuser-Busch InBev, N.V. (InBev), combined the Anheuser-Busch Companies.[1] As relevant here, the parties agree the transaction resulted in a "Change of Control" under the plan. Section 19.11(f) of the Anheuser-Busch Companies Pension Plan (plan) provides for an enhanced pension benefit for a plan participant "whose employment with the Controlled Group is involuntarily terminated within three (3) years after the Change in Control." It does so by adding "an additional five (5) years" to the participant's "Credited Service" for purposes of calculating the participant's benefits. At some point in the following year, InBev announced it was selling BEC to Blackstone Capital Partners V.L.P., to be finalized on December 1, 2009.

In September 2012, Knowlton and other named plaintiffs in this lawsuit brought claims to Anheuser-Busch for enhanced pension benefits. They contended (1) a change in control occurred when InBev combined Anheuser-Busch Companies, and (2) they were involuntarily terminated from employment with the Controlled

---

[1]The parties describe this transaction differently: Anheuser-Busch alleged the two entities "combined," while plaintiffs stated InBev "acquired" Anheuser-Busch Companies.

Group when InBev sold BEC, and they were entitled to enhanced benefits under Section 19.11(f) of the plan.[2]

The Anheuser-Busch retirement plan administrator denied the claims. The plan administrator stated the "purpose for the special benefits under Section 19.11(f) is to provide additional benefits to individuals who are out of work after they involuntarily lose their employment within three years after a change in control of Anheuser-Busch Companies." According to the plan administrator, eligibility for enhanced benefits under Section 19.11(f) required "an actual break in an individual's employment, rather than simply a change in the owner of the entity employing the individual during a period of continuous employment." Plaintiffs appealed the denials of benefits to the Pension Plans Appeals Committee, which upheld the decisions.

Plaintiffs filed this action to obtain enhanced benefits under the plan. See 29 U.S.C. § 1132(a)(1)(B). The district court certified the proposed class under Federal Rule of Civil Procedure 23(b)(2) for Count I of the consolidated complaint,[3]

_____

[2]Section 19.11(f) provides in relevant part:

The Normal Retirement Benefit, Late Retirement Benefit, Early Retirement Benefit or Termination Benefit of any Participant under the Supplement for the Anheuser-Busch Salaried Employees' Pension Plan . . . whose employment with the Controlled Group is involuntarily terminated within three (3) years after the Change in Control . . . shall be determined by taking into account an additional five (5) years of Credited Service and, for purposes of Section 4.3 [Early Retirement Benefits] only, an additional five (5) years of age, and shall in any event be at least fifteen percent (15%) larger than the Participant's Normal Retirement [benefits].

[3]The class is defined as:

All persons who were: (a) participants in the Anheuser-Busch

-4-

and plaintiffs moved for partial judgment on the pleadings on Count I, see Fed. R. Civ. P. 12(c). The district court adopted the Sixth Circuit's reasoning in Adams, which presented "the identical issue." See Adams, 758 F.3d at 745-47. In Adams, plaintiffs were participants in the plan and former employees of the Metal Container Corporation, which was an Anheuser-Busch Company until InBev sold it to Ball Corporation. See id. at 745-46. Applying de novo review, the Sixth Circuit held Section 19.11(f) was unambiguous and the only plausible interpretation of "involuntarily terminated" was to read that phrase together in context with the words preceding it—"whose employment with the Controlled Group is involuntarily terminated." See id. at 747-48. The Sixth Circuit concluded the plan administrator's denial of benefits was "arbitrary and capricious." Id. at 748-49.

Three months after the district court entered judgment on the pleadings, the district court granted Anheuser-Busch's motion for a final order and stay of judgment pending appeal.[4] Rejecting plaintiffs' request to calculate the specific amount of benefits due to each class member, the district court simply ordered Anheuser-Busch to direct the plan administrator to provide each member of the class with the enhanced pension benefit under Section 19.11(f). The district court further ordered Anheuser-Busch to make a remedial back payment with interest to those members of the class whose benefits had already been paid and to make future pension payments with the benefit of Section 19.11(f) to those members of the class not yet eligible for

Companies Pension Plan in 2008; (b) employed by Anheuser-Busch Companies, LLC or any of its operating divisions and subsidiaries (the "Controlled Group") on both November 17 and November 18, 2008; and (c) employed as a salaried employee by Busch Entertainment Corporation when the sale of Busch Entertainment Corporation to the Blackstone Group closed on or about December 1, 2009.

[4]The amended consolidated complaint originally contained three counts. In this order, the district court decided the only remaining count, seeking identical relief as Count I, but for a smaller subset of the class, was moot.

benefits. The district court stayed its final judgment pending the outcome of any appeal.

Plaintiffs unsuccessfully moved to alter or amend the district court's final order under Federal Rule of Civil Procedure 59(e). The district court emphasized its previous determination that the plan "will be perfectly capable of calculating and distributing necessary benefits—including payments it should have already paid out had it properly interpreted and applied the language of the Plan" and that "the amount of those payments were not required to be part of the judgment itself." Anheuser-Busch filed notice of appeal, and plaintiffs filed notice of a cross-appeal with a motion to dismiss Anheuser-Busch's appeal for lack of jurisdiction. We granted Anheuser-Busch's motion to take plaintiffs' motion to dismiss the appeal with the case.

## II.    DISCUSSION
### A.    Plaintiffs' Motion to Dismiss the Appeal

After the district court denied their Rule 59 motion, citing Eighth Circuit Local Rule 47A,[5] plaintiffs moved to dismiss Anheuser-Busch's appeal on the basis that the district court had not yet issued a final order. See 28 U.S.C. § 1291 (providing our court jurisdiction over "*final* decisions of the district courts of the United States" (emphasis added)); see also, e.g., Faysound Ltd. v. Walter Fuller Aircraft Sales, Inc., 952 F.2d 980, 981 (8th Cir. 1991) (discussing Local Rule 47A). "A final judgment is one that 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" Borntrager v. Cent. States, Se. & Sw. Areas Pension Fund, 425 F.3d 1087, 1091 (8th Cir. 2005) (quoting Cunningham v. Hamilton County, 527 U.S. 198, 204 (1999)).

---

[5]Eighth Circuit Local Rule 47A(b) states: "The appellee may file a motion to dismiss a docketed appeal on the ground the appeal is not within the court's jurisdiction. . . . The court will consider the motion and enter an appropriate order."

Plaintiffs argue <u>Dieser v. Continental Casualty Co.</u> "confirms" the district court's order entering judgment was not final because it failed to calculate the benefits owed to each member of the class. <u>See</u> <u>Dieser v. Cont'l Cas. Co.</u>, 440 F.3d 920, 923 (8th Cir. 2006). Unlike the district court in <u>Dieser</u>, where the district court "orders did not purport to dispose of all issues in the case," <u>id.</u>, here, the district court issued final relief because it purported to address and resolve all of the issues in the case, despite plaintiffs' assertions to the contrary. <u>Cf.</u> <u>Liberty Mut. Ins. Co. v. Wetzel</u>, 424 U.S. 737, 744 (1976) ("[J]udgments . . . where assessment of damages or awarding of other monetary relief remains to be resolved have never been considered to be 'final' within the meaning of 28 U.S.C. § 1291."). Although plaintiffs contend the order is not final because they were not awarded damages, <u>see</u> <u>id.</u>, the district court considered their argument but decided the nature of their action was declaratory, and they were not entitled to an award that calculated the benefits owed. <u>See</u> <u>Welsh v. Burlington N., Inc., Emp. Benefits Plan</u>, 54 F.3d 1331, 1339-40 (8th Cir. 1995) (observing the district court has the power "to determine what benefits are due [under ERISA] and to award them"). This is different from a case like <u>Dieser</u>, for instance, where a district court forgoes dispensing with all issues presented in the case, or where it decides liability but refuses to monetize that award—with the understanding that there is an award left to be calculated. <u>Cf.</u> <u>Albright v. UNUM Life Ins. Co. of Am.</u>, 59 F.3d 1089, 1092-93 (10th Cir. 1995) (determining the "final order doctrine" prevented the court from assuming jurisdiction where judgment had been entered against the defendant in an ERISA claim for disability benefits, but the district court failed to "address specifically what benefits would be owed to [the plaintiff]"). We are satisfied we have jurisdiction over this appeal.

## B. Section 19.11(f) Enhanced Benefits Eligibility

"We review de novo a grant of a motion for judgment on the pleadings." <u>Porous Media Corp. v. Pall Corp.</u>, 186 F.3d 1077, 1079 (8th Cir. 1999). "[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary

authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). Where an ERISA-qualifying plan lends discretionary authority to a plan administrator to determine participants' benefits, we review the plan administrator's decision for an abuse of discretion. See Rutledge v. Liberty Life Assurance Co. of Bos., 481 F.3d 655, 659 (8th Cir. 2007). Under an abuse-of-discretion review, the plan administrator's "interpretation of uncertain terms in a plan" will be upheld if that interpretation was reasonable. King v. Hartford Life & Accident Ins. Co., 414 F.3d 994, 999 (8th Cir. 2005) (en banc).

Section 14.11 of the plan grants the plan administrator "sole discretion" in the "interpretation of all Plan provisions," including whether a "Beneficiary is entitled to any benefit pursuant to the terms of the Plan."[6] In adopting the reasoning of Adams, the district court limited its review to the meaning of Section 19.11(f), without addressing whether Anheuser-Busch's interpretation of the plan was reasonable. See Adams, 758 F.3d at 747 (applying de novo review to the question of whether the "plan language [was] ambiguous"). Finding consideration of the administrative record unnecessary, the district court determined it need not go "beyond the words of Section 19.11(f) itself," see Windstream Corp. v. Da Gragnano, 757 F.3d 798, 803-04 (8th Cir. 2014), and concluded the only reasonable interpretation of the section entitled plaintiffs to enhanced benefits. Because the district court did not analyze the rest of the plan or the plan administrator's written decision, Anheuser-Busch argues the district court failed to consider the plan as a whole and was "unaware of the *Plan-based support* for the Appeals Committee's conclusion that Section 19.11(f) was intended to provide enhanced benefits only to

---

[6]Section 14.11 also states, "Any construction of the terms of the Plan for which there is a rational basis that is adopted by the Plan Administrator shall be final and legally binding on all parties."

those participants who lose their job, and not to participants who continue in the same job after a transfer."

Anheuser-Busch proposes Sections 3.1 and 2.5 of the plan, providing conditions for "Severance from Service Date" and "Employee Transfers and Layoffs," respectively, support its argument that Section 19.11(f) was not intended to apply to plaintiffs because they suffered no break in their employment. Section 3.1 defines vesting of benefits upon severance, and "include[s] for this purpose a termination of employment in connection with sale of part or all of its interest in an incorporated or unincorporated business or assets by a member of the Controlled Group." Because this section explicitly defines severance to include a change resulting from an asset sale, Anheuser-Busch asserts Section 19.11(f) does *not include* the present situation because, if it did, the drafters of the plan would have stated it. Section 2.5 states that a transfer or "other change in . . . employment classification . . . shall [not] be treated as a Break in Service or a termination of employment." It also provides that if a transfer shall result in an employee becoming ineligible for plan participation, that employee will "no longer accrue any benefits under the Plan." Here, no one is alleging plaintiffs were transferred from their former positions. Neither section demonstrates, as Anheuser-Busch contends, that "termination" should mean "loss of a job" in the sense that Anheuser-Busch wants us to read it.

Second, Anheuser-Busch argues Section 19.11(f) is ambiguous because it "reasonably supports multiple interpretations" and the plan administrator's interpretation must be upheld if it was reasonable. Anheuser-Busch proposes the phrase "*with the Controlled Group*" merely clarifies that the employment referenced in the section means the job that made the participant eligible for the plan. We do not dispute the phrase "*with the Controlled Group*" modifies the type of employment the plan was describing; however, "involuntar[y] terminat[ion]" of "employment with the Controlled Group" cannot reasonably be interpreted to exclude the circumstances present here.

The phrase, "*whose employment with the Controlled Group is involuntarily terminated*," must be understood by applying the words' plain meaning. See Johnson v. Am. United Life Ins. Co., 716 F.3d 813, 819-20 (4th Cir. 2013) ("A paramount principle of contract law requires us to enforce the terms of an ERISA insurance plan according to the plan's plain language in its ordinary sense." (citation omitted)). As the Sixth Circuit explained:

> Given the fact that "involuntarily terminated" has meaning only when the thing that is being involuntarily terminated is identified, and given that the phrase at issue in Section 19.11(f) identifies the thing being terminated as "employment with the Controlled Group," it is clear that when each term in the provision is understood according to its ordinary meaning, and no term is ignored, eligibility for enhanced pension benefits pursuant to Section 19.11(f) requires satisfaction of five elements: (1) that the recipient be a plan participant (2) whose employment with the Controlled Group (3) is involuntarily terminated (4) within three years after (5) a change in control.

Adams, 758 F.3d at 748. Plaintiffs here were all salaried participants in the plan, and on December 1, 2009, when the sale of BEC finalized, "without the plaintiffs' consent and for reasons beyond the plaintiffs' control," their employment *with the Controlled Group* was terminated. Id. at 749. Whether plaintiffs' employment continued in the same capacity once they were no longer employed by a member of the Controlled Group is irrelevant. Cf. Hunger v. AB, 12 F.3d 118, 119, 121 (8th Cir. 1993) (concluding "under the plain language of the Plan," employees who "continued to perform the same jobs" after the division they worked in was sold "were [nonetheless] no longer employed by [their former employer]"). We agree Section 19.11(f) is unambiguous.

Even under the deferential abuse-of-discretion standard, a plan administrator cannot contradict the plain language of an ERISA plan to deny benefits. See Admin. Comm. of the Wal-Mart Stores, Inc. Assocs.' Health & Welfare Plan v. Gamboa, 479

F.3d 538, 542 (8th Cir. 2007) ("An interpretation that conflicts with the plain language of a health and welfare plan is an abuse of discretion."). Anheuser-Busch cannot reasonably interpret Section 19.11(f) to require plan participants to have been "out of work after they involuntarily lose their employment within three years after a change in control." Nor can the plan administrator reasonably infer "an actual break in an individual's employment" is required in order for Section 19.11(f) to apply. See Admin. Comm. of the Wal-Mart Stores, Inc. Assocs.' Health & Welfare Plan v. Shank, 500 F.3d 834, 838 (8th Cir. 2007) ("Ordinarily, courts are to enforce the plain language of an ERISA plan 'in accordance with its literal and natural meaning.'" (citation omitted)). For these reasons, we agree with the district court and the Sixth Circuit's conclusion that Section 19.11(f) entitles plaintiffs to an enhanced pension benefit.

Because we affirm the judgment on the merits, we need not consider plaintiffs' alternative argument to apply collateral estoppel—though we have considered the potentially inequitable result that could have occurred had we reached the contrary conclusion. See, e.g., Aldens, Inc. v. Miller, 610 F.2d 538, 541 (8th Cir. 1979) ("Although we are not bound by another circuit's decision, we adhere to the policy that a sister circuit's reasoned decision deserves great weight and precedential value. As an appellate court, we strive to maintain uniformity in the law among the circuits, wherever reasoned analysis will allow, thus avoiding unnecessary burdens on the Supreme Court docket.").

## C.    Cross-Appeal

In their cross-appeal, plaintiffs contend if the district court's decision was final and appealable (which we have decided it was), the decision still must be reversed and remanded because the district court failed to make individual calculations of

enhanced benefits owed to individual members of the class. In this case, we evaluate de novo the district court's chosen remedy.[7] See Tussey, 746 F.3d at 338-39.

Before addressing plaintiffs' argument, a brief retreat into procedural history is useful. After the Sixth Circuit issued its decision in Adams, plaintiffs moved for partial judgment on the pleadings as to Count I, asserting all that was left for the district court to decide was "the amount of the enhanced benefit to be received by each class member—a determination that can be made only after Defendants respond to the discovery." Subsequent to the district court's grant of partial judgment on the pleadings and adoption of Adams, Anheuser-Busch moved for final judgment, claiming Count I had been "decided in full" and attaching an order issued by the district court in Adams as support. See Adams v. Anheuser-Busch Cos., No. 2:10-ev-826 (E.D. Ohio Dec. 24, 2014). Upon remand from the Sixth Circuit, the Adams district court concluded "[t]he relief ordered by the court of appeals can be accomplished by a judgment ordering the Plan to apply the enhanced benefit provisions in § 19.11(f) in calculating the pension benefits of class members." Adams v. Anheuser-Busch Cos., No. 2:10-ev-826 (E.D. Ohio Nov. 21, 2014). The Adams district court simply entered judgment ordering "Defendants . . . to cause the Plan to provide each member of the Amended Proposed Class with the enhanced pension benefit set forth in Section 19.11(f) of the Plan." Adams v. Anheuser-Busch Cos., No. 2:10-ev-826 (E.D. Ohio Dec. 24, 2014).

---

[7]In Tussey v. ABB, Inc., we held de novo review of the district court's "'method of calculating damages'" was appropriate, while the calculations themselves are "'reviewed for clear error.'" Tussey v. ABB, Inc., 746 F.3d 327, 338-39 (8th Cir. 2014) (quoting Peabody v. Davis, 636 F.3d 368, 373 (7th Cir. 2011)); see also Brown v. Aventis Pharm., Inc., 341 F.3d 822, 825 (8th Cir. 2003) (reviewing the amount of the district court's award of damages under ERISA for an abuse of discretion). Whether the district court adequately resolved plaintiffs' claims is a question that is "purely legal," suitable for the "exercise [of] plenary review." Bd. of Trs. of Trucking Emps. of N. J. Welfare Fund, Inc.-Pension Fund v. Kero Leasing Corp., 377 F.3d 288, 294 (3d Cir. 2004).

-12-

In response to Anheuser-Busch's motion, plaintiffs argued the district court could not issue a final award without a calculation of benefits due to the class in Count I of the consolidated complaint. Plaintiffs asserted damages could be readily calculated if discovery proceeded and Anheuser-Busch provided necessary information about plan participants. Once again mirroring the course of proceedings in Adams, the district court declined to make any such calculations of benefits owed, observing plaintiffs had "previously urged this Court to follow the path set forth in the Adams litigation. Now it is the defendants urging the Court to follow Adams." The district court determined (1) it was not possible to calculate "a concrete damages number" as one-third of the plaintiffs' class had not yet made an election with regard to benefits; and (2) the plaintiffs' consolidated complaint did "not actually seek 'damages' but rather . . . [raised] a question of Plan interpretation and [sought] an order directing application of the plaintiffs' interpretation of Section 19.11(f)."

While we understand the desire to dispense with the calculations by ordering the plan administrator to make them, we disagree with the district court's conclusion that plaintiffs' complaint sought only a declaration that Section 19.11(f) applied. Plaintiffs brought this action under 29 U.S.C. § 1132(a)(1)(B), which authorizes an action to recover benefits or to enforce and clarify rights under an ERISA-qualifying plan. "Relief may take the form of accrued benefits due, a declaratory judgment on entitlement to benefits, or an injunction against a plan administrator's improper refusal to pay benefits." Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 53 (1987). It is true resolution of Count I depended on an interpretation of the plan, yet, looking at the prayer of relief in Count I of plaintiffs' consolidated complaint, plaintiffs requested the district court:

> [e]nter judgment in favor of each named plaintiff and against all the Plan and Administrators of the Plan for future retirement benefits calculated on the basis of applying the [Section 19.11(f)] benefit enhancement, and award them early retirement benefits under Section [19.11](f) of the Plan . . . with pre-judgment interest on each payment that should have

-13-

been made to them from December 1, 2009 to the date of judgment, and post-judgment interest, and other such relief as to which they may be entitled.

In regard to the whole class, plaintiffs requested the district court:

Permit each plaintiff and each class member who would have at any time prior to the date of judgment qualified for early retirement if his or her employment with the Controlled Group was treated as terminating on December 1, 2009 to elect early retirement as of any date after the date he or she would have first so qualified, and *award each who so elects early retirement benefits under [Section 19.11(f)] of the Plan* from and after the effective date of such election as though he or she had five additional years of service and five additional years of age, *with prejudgment interest* on each payment that should have been made to him or her from the effective date of such election to the date of judgment, and post-judgment interest.

(Emphasis added).

Upon examination of these paragraphs in plaintiffs' prayer for relief in Count I of the consolidated complaint, plaintiffs made a sufficient request for an actual award of certain benefits with the application of the enhanced benefit—in addition to a declaration that Section 19.11(f) applies. See Peabody, 636 F.3d at 373 ("Unsurprisingly, the remedy in a successful action for plan benefits is to receive the accrued benefits."). Therefore, we reverse and remand with instructions to reconsider the plaintiffs' prayer for relief and, to the extent requested and provable, calculate and award the benefits owed to plaintiffs by applying Section 19.11(f).

Finally, plaintiffs challenge the district court's oversight of discovery, arguing Anheuser-Busch has not yet provided them with necessary information so that the notice requirement under Federal Rule of Civil Procedure 23(c) can be satisfied. But see, e.g., Fed. R. Civ. P. 23(c)(2), advisory committee's note to 2003 Amendment (explaining while members of a class certified under Rule 23(b)(2) "have interests

that may deserve protection by notice," notice is only "expressly require[d] . . . in actions certified under Rule 23(b)(3)"). "Although broad, the district court's authority [to manage class actions] is not without limits. Appellate review is necessary to assure that the rights of absentee class members are not inundated in the wake of a district court's brisk supervision." Hitt v. Nissan Motor Co. (In re Nissan Motor Corp. Antitrust Litig.), 552 F.2d 1088, 1096 (5th Cir. 1977). Plaintiffs argue they are unable to verify that the plan administrator has correctly calculated and distributed enhanced benefits to those class members who have already elected benefits because the "vast majority of the class members are not only absent but unknown." The district court decided information such as "spreadsheets stating the names, Plan status, and benefits received and to be received" was "immaterial . . . to the judgment at issue." Upon remand, the district court may reconsider whether certain records will assist in its calculation of the requested benefits. Cf., e.g., Day v. Celadon Trucking Servs., Inc., 827 F.3d 817, 835 (8th Cir. 2016).

## III.    CONCLUSION

We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

———————————————