# United States Court of Appeals

## For the Eighth Circuit

_____

No. 20-2640

_____

Timber Ridge Escapes, LLC

*Plaintiff - Appellant*

v.

Quality Structures of Arkansas, LLC

*Defendant - Appellee*

------------------------------

Quality Structures of Arkansas, LLC

*Plaintiff - Appellee*

v.

Welk Resort Group, Inc.

*Defendant*

Timber Ridge Escapes, LLC

*Defendant - Appellant*

_____

No. 20-2928

_____

Timber Ridge Escapes, LLC

*Plaintiff - Appellant*

v.

Quality Structures of Arkansas, LLC

*Defendant - Appellee*

------------------------------

Quality Structures of Arkansas, LLC

*Plaintiff - Appellee*

v.

Welk Resort Group, Inc.

*Defendant*

Timber Ridge Escapes, LLC

*Defendant - Appellant*

_____

Appeals from United States District Court
for the Western District of Missouri - Springfield

_____

Submitted: June 16, 2021
Filed: July 26, 2021

_____

Before LOKEN, KELLY, and ERICKSON, Circuit Judges.

_____

ERICKSON, Circuit Judge.

This appeal arises out of a rancorous construction dispute between Timber Ridge Escapes, LLC ("Timber Ridge") and Quality Structures of Arkansas, LLC ("Quality Structures"). After a nine-day bench trial, the district court awarded Timber Ridge $22,500 in damages and Quality Structures an amount in excess of $5 million in damages. Timber Ridge appeals.[1] With one exception, we affirm.

I. BACKGROUND

Timber Ridge is a self-described owner/developer of a resort near Branson, Missouri. In July 2015, Timber Ridge entered into four virtually identical contracts with Quality Structures under the terms of which Quality Structures agreed to serve as the general contractor for the project (the "construction contracts").[2] Pursuant to the contract, Quality Structures agreed to construct two buildings (Buildings 8 and 9) and two building pads (Building Pads 10 and 11) for Timber Ridge. Over time the relationship between Timber Ridge and Quality Structures deteriorated, and on February 6, 2017, Timber Ridge terminated the contracts. After the termination, Timber Ridge seized some of Quality Structures' property, including documentation for the project. Timber Ridge refused to return the property until the parties reached a partial settlement on June 1, 2017.

On June 12, 2017, Timber Ridge sued Quality Structures asserting claims sounding in both contract and tort. Timber Ridge sought over $2 million in damages on its claims for breach of contract, breach of the implied covenant of good faith and

---

[1]Quality Structures initially filed a cross appeal, which it later moved to dismiss. We granted that motion.

[2]The construction contracts each consist of a Standard Form Agreement, a Schedule of Values, and General Conditions.

fair dealing, promissory estoppel, tortious interference with contractual relations, breach of contract to indemnify and defend as well as claims for a declaratory judgment and for injunctive relief. At its heart, Timber Ridge's complaint alleges that Quality Structures caused undue delays and performed unsatisfactory work. Quality Structures filed an answer and counterclaim seeking over $6 million in damages for sums it claimed it was owed for the work it completed. The counterclaims sought to pierce the corporate veil and included claims for breach of contract, violation of the Missouri Prompt Pay Act, reformation, conversion, fraudulent inducement, quantum meruit, equitable entrustment, and promissory estoppel.

The lawsuit quickly descended into a quagmire of finger pointing, which was aptly described by the district court as involving the expenditure of "significant resources demonstrating every way that the other party breached the terms of the contracts and why they themselves are blameless." This attitude on the part of parties made trial of the case exponentially more difficult.

Prior to trial, the court resolved such issues as it could on summary judgment. Following a bench trial, the court issued findings of fact and conclusions of law awarding Timber Ridge $22,500.00 for delays caused by Quality Structures, approximately $5.2 million in damages to Quality Structures, and $101,239.62 in attorney's fees and $35,490.46 in costs to Quality Structures. Timber Ridge appeals, arguing the district court erred in awarding Quality Structures (1) damages for extra excavation work, (2) certain other damages, and (3) attorney's fees.

## II.   DISCUSSION

### A.   Extra Excavation

The construction contracts originally contemplated excavation work at agreed upon prices: $75 per cubic yard for excavated rock and $6.85 per cubic yard for

excavated dirt. About a month after the parties entered into the construction contracts, Timber Ridge sent Quality Structures written instructions that greatly expanded the scope of the excavation work. This expansion increased the amount of rock and dirt that Quality Structures had to excavate, especially the amount of rock that needed to be excavated.

Quality Structures performed the extra excavation work as instructed but before Quality Structures could request additional payment for the work, Timber Ridge terminated the contracts. When Quality Structures requested payment (about a month after the termination), Timber Ridge refused to pay. The district court concluded that Timber Ridge breached the construction contracts when it failed to pay for the additional excavation work. Timber Ridge contends Quality Structures (1) failed to substantially comply with "contractual predicates to payment," and (2) did not put forth sufficient evidence to "prove damages from nonpayment."

### 1. Substantial Compliance

We apply Missouri substantive law to this diversity action. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). To recover for a breach of contract under Missouri law, Quality Structures must establish that it substantially performed its obligations under the contracts. See Moore v. Armed Forces Bank, N.A., 534 S.W.3d 323, 327 (Mo. Ct. App. 2017) (listing the elements for breach of contract). A party substantially performs if the contract deviation is "very slight" and the opposing party has "received substantially the same benefit it would have from literal performance." Pepsi MidAm. v. Harris, 232 S.W.3d 648, 653 (Mo. Ct. App. 2007).

While the parties apparently dispute whether federal law or Missouri law provides the standard of review for the district court's substantial performance decision, they agree that the appropriate standard of review is for clear error. Because

the standard of review under both Missouri law and federal law is for clear error we need not resolve the dispute over which law applies.

We will only reverse a finding under the clearly erroneous standard if it "is not supported by substantial evidence in the record, if it is based on an erroneous view of the law, or if we are left with the definite and firm conviction that an error was made." Federated Mut. Ins. Co. v. Moody Station & Grocery, 821 F.3d 973, 977 (8th Cir. 2016) (citations omitted); Flooring Sys., Inc. v. Saat Constr. Co., 100 S.W.3d 835, 837 (Mo. Ct. App. 2003) (same). The evidence in the record makes clear that the scope of the work was both dramatically expanded and that Quality Structures performed the expanded scope of the work. The district court did not clearly err in finding substantial performance under the contracts related to the excavation work.

Even though substantial performance occurred, Timber Ridge objects to the district court's determination of the amount due for the performance. Under the contracts, the scope of work and amounts due for that work could be adjusted through various mechanisms including, as relevant here, a Construction Change Directive. Specifically, § 7.3 of the General Conditions for the construction contracts provides for Construction Change Directives—that is, "written order[s]" by Timber Ridge "directing a change in the Work prior to agreement on adjustment, if any, in the Contract Sum or Contract Time, or both." A Construction Change Directive may result in an increase in the Contract Sum "based on" (among other things) "unit prices stated in the Contract Documents or subsequently agreed upon."

The district court found that Timber Ridge issued a Construction Change Directive under § 7.3 for the extra excavation work and that Quality Structures substantially complied with § 7.3, which entitled it to receive payment for an increased amount under the contract. The record contains evidence that Timber Ridge submitted a written order to Quality Structures that directed a change in the excavation work. The district court did not err in finding this writing was sufficient

-6-

to be a Construction Change Directive. We also conclude that the court properly calculated an increase in the Contract Sum based on the unit prices agreed to by the parties in the original contracts for excavation ($75 per yard for rock and $6.85 per yard for dirt).

Timber Ridge's argument that Quality Structures failed to substantially comply with the requirements for payment because Quality Structures "did not provide documentation of its actual costs" is unavailing. Under certain circumstances, § 7.3.6 requires "an itemized accounting" of expenses (such as labor, equipment, and overhead) for an adjustment in the Contract Sum. But, even assuming an itemized accounting was required,[3] the district court did not clearly err in finding that Quality Structures substantially complied with the requirement. When it requested payment for the extra excavation work, Quality Structures submitted itemizations documenting the total materials excavated and overhead costs. Because the parties agreed to pay for excavation based on unit prices, which captured labor and equipment costs, it is not clearly erroneous to conclude that Quality Structures' documentation substantially complied with any requirement to provide an "itemized accounting."[4] The district court did not clearly err in determining that Quality Structures substantially complied with the contractual predicates for payment for the extra excavation work.

---

[3]We are not convinced that requirement applies to this adjustment based on unit prices under § 7.3.3.2. Rather, § 7.3.6 requires itemization if Quality Structures "does not promptly respond or disagrees with the method for adjustment in the Contract Sum" or for adjustments under § 7.3.3.3, neither of which appear to be applicable.

[4]We also find persuasive the district court's finding that any failure by Quality Structures to comply with the Construction Change Directive process was excused by Timber Ridge's material breach in terminating the contracts and thereafter seizing Quality Structures' property, including its documentation for the project, and initiating suit.

## 2. *Proof of Damages*

Timber Ridge contends the district court erred in finding Quality Structures proved damages related to Timber Ridge's failure to pay for the additional excavation work. We again review for clear error. See Vigoro Indus., Inc. v. Crisp, 82 F.3d 785, 789 (8th Cir. 1996) (noting that the court's determination of damages is a form of fact-finding to be set aside only if clearly erroneous); Williams v. Williams, 99 S.W.3d 552, 557 (Mo. Ct. App. 2003) (affirming the trial court's damages award unless clearly erroneous).

To recover damages for breach of contract, Quality Structures must prove both the existence and the amount of damages with "reasonable certainty." Williams, 99 S.W.3d at 557 (citations omitted). Timber Ridge argues that Quality Structures did not meet its burden when it failed to properly maintain and produce records of the actual cost of the extra excavation work, including records for labor and equipment use. This argument is a non-sequitur as the contract established a price for the additional excavation at a fixed price per cubic yard—$75 for rock and $6.85 for dirt.

Timber Ridge also claims Quality Structures' expert Josh Holland's testimony was unreliable as to the total number of cubic yards excavated by Quality Structures and the damages award is therefore speculative as to the excavation claim. We disagree.[5]  Holland, a civil engineer, used engineering software to calculate the volume of materials excavated. Although Holland disclaimed that his calculations

---

[5]To the extent that Timber Ridge challenges the district court's methodology in calculating damages, we recognize that issue could be subject to *de novo* review. See Knowlton v. Anheuser-Busch Cos. Pen. Plan, 849 F.3d 422, 430 n.7 (8th Cir. 2017) (noting methodology is reviewed *de novo* in an ERISA case); Comens v. SSM St. Charles Clinic Med. Gr., Inc., 335 S.W.3d 76, 81 (Mo. Ct. App. 2011) ("The proper measure of damages" is "review[ed] *de novo*."). But the reliance on Holland's calculations meets muster under any standard of review.

were a "best guess estimate," he testified that he reached his conclusions to a reasonable degree of engineering certainty. Holland's methodology is the industry standard for calculating excavation volumes and is the same methodology the parties used to approve the project's original Schedule of Values.[6] The district court permissibly relied on Holland's calculations when finding that Quality Structures proved damages based on the cubic yards it excavated. See Denton Constr. Co. v. Mo. State Highway Comm'n, 454 S.W.2d 44, 56 (Mo. 1970) (accepting estimated excavation volumes as the "best available" evidence of and a "reasonable basis" for damages where "the actual amount of damages" was "not be susceptible of exact proof" (citations omitted)). Finding unpersuasive Timber Ridge's remaining challenges to the damages award for the extra excavation work, we affirm.

## B. Certain Other Damages

The district court also awarded Quality Structures damages on its breach of contract and reformation counterclaims for other amounts owing on work that Quality Structures performed.[7] Timber Ridge again argues that the district court clearly erred in finding Quality Structure proved these damages. We disagree, with one exception.

---

[6]And Holland testified that calculations *after* excavation (such as for the damages computation) are more accurate than calculations *before* excavation (such as for the Schedule of Values).

[7]Specifically, the court awarded damages for certain unpaid Change Order Requests, Pay Applications, and additional amounts due after the court reformed the construction contracts to increase the Guaranteed Maximum Prices for Buildings 8 and 9 due to mutual mistake of the parties. This was permissible as the construction contracts each had a Guaranteed Maximum Price, which reflected the maximum price that Timber Ridge would have to pay under the contracts, absent a change through the appropriate contractual procedures.

Timber Ridge points us to one specific error in the damages award. On a Change Order Request for site lighting for Building 8, the district court awarded $68,599.03. However, Quality Structures indicated at trial that it was not seeking to recover for labor and certain bollards on that Change Order Request. Excluding those amounts from the damages award, we are unsure how the damages on this specific Change Order Request would total $68,599.03. We ask the district court to reconsider that amount in light of the concessions made at trial and either adjust its award or explain its calculation.

We are unmoved by Timber Ridge's remaining challenges to the damages award. Quality Structures supported its damages requests with documentation (such as invoices and internal records), testimony, or both. On careful review, we conclude the district court did not clearly err in either relying on that evidence or calculating the damages from that evidence.[8] With the one exception noted above, we affirm.

## C.    Attorney's Fees

Finally, Timber Ridge argues that the district court abused its discretion in awarding Quality Structures attorney's fees. See Weitz Co. v. MH Wash., 631 F.3d 510, 528 (8th Cir. 2011) (reviewing for abuse of discretion and noting that state law governs the availability of attorney's fees in diversity cases). The district court awarded Quality Structures $101,239.62 in fees under the Missouri Prompt Pay Act

---

[8]Timber Ridge contends two issues infect the entire damages award: (1) that no final accounting was conducted under the construction contracts, and (2) that Quality Structures relied on Guaranteed Maximum Prices under the construction contracts to compute how much work it completed (while it awaited the final accounting). Viewed in isolation, these concerns could carry weight. But we agree with the district court that Timber Ridge is responsible for these problems by accepting Quality Structures' methodology throughout the project while awaiting final accounting and then making a final accounting impossible. The district court did not clearly err in finding damages, even with these obstacles.

("PPA"), Mo. Rev. Stat. § 431.180. The district court limited fees to those arising only from Timber Ridge's failure to pay Pay Applications submitted prior to termination ($958,773.07), and its failure to pay Change Order Requests prior to termination ($448,973.23) because it found Timber Ridge reasonably disputed the remaining claims.

The PPA authorizes an award of attorney's fees in construction disputes if the construction contract (1) was entered into after August 28, 1995, and (2) required scheduled payments which were not made. See Mo. Rev. Stat. § 431.180. Timber Ridge contends the second requirement was not met for the pre-termination Change Order Requests because those requests did not generate a "due date for payment." But, absent Timber Ridge's material breaches of the construction contracts, those requests would have been approved and generated a scheduled payment. Timber Ridge cannot skirt a due date for payment (and therefore liability under the PPA) by wrongfully failing to process Change Order Requests. Because the district court, at least implicitly, found that Timber Ridge was required to pay Quality Structures at the completion of the work (before termination), this argument fails. See Twehouse Excavating, Inc. v. Jefferson City Ret., LLC, 613 S.W.3d 499, 507 (Mo. Ct. App. 2020) (finding that payment being due at the completion of work was sufficient for a scheduled payment).

Timber Ridge next asserts the district court abused its discretion in awarding fees because Timber Ridge withheld all payment from Quality Structures "based upon a legitimate dispute." While Missouri law allows courts to deny fees based on a legitimate dispute, it does not require courts to do so. See Walton Constr. Co. v. MGM Masonry, Inc., 199 S.W.3d 799, 807–08 (Mo. Ct. App. 2006). Finding no abuse of discretion, we affirm the fee award.

## III. CONCLUSION

We affirm the judgment of the district court with one exception. We reverse and remand for reconsideration consistent with this order the award of $68,599.03 in damages on the Change Order Request for site lighting for Building 8.

_____