RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 14a0150p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

―――――――――

RUSBY ADAMS, JR.; LESLIE SCHELL; DANIEL STEWART; KEVIN JONES, individually and on behalf of all others similarly situated,

    *Plaintiffs-Appellants,*

*v.*

ANHEUSER-BUSCH COMPANIES, INC.; ANHEUSER-BUSCH COMPANIES PENSION PLAN; ANHEUSER-BUSCH COMPANIES PENSION PLAN APPEALS COMMITTEE,

    *Defendants-Appellees.*

No. 13-3149

Appeal from the United States District Court
for the Southern District of Ohio at Columbus
No. 2:10-cv-00826—James L. Graham, District Judge.

Argued: October 1, 2013

Decided and Filed: July 11, 2014

Before: DAUGHTREY, COLE, and WHITE, Circuit Judges.

―――――――――

**COUNSEL**

**ARGUED:** Scott J. Stitt, JAMES E. ARNOLD & ASSOCIATES, LPA, Columbus, Ohio, for Appellants. Edward M. Crane, SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP, Chicago, Illinois, for Appellees. **ON BRIEF:** Scott J. Stitt, Gerhardt A. Gosnell II, James E. Arnold, JAMES E. ARNOLD & ASSOCIATES, LPA, Columbus, Ohio, for Appellants. Edward M. Crane, Albert L. Hogan III, David R. Pehlke, SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP, Chicago, Illinois, for Appellees.

---

**OPINION**

---

MARTHA CRAIG DAUGHTREY, Circuit Judge.   Rusby Adams, Jr., Leslie Schell, Daniel Stewart, and Kevin Jones are the named plaintiffs in this class-action suit against defendants Anheuser-Busch Companies, Inc., the Anheuser-Busch Companies Pension Plan, and the Anheuser-Busch Companies Pension Plan Appeals Committee (collectively, Anheuser-Busch), in which they seek benefits under the terms of an employee-benefits plan governed by the provisions of the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001-1461 (ERISA).   They now appeal the district court's decision upholding the plan administrator's denial of their claims for benefits provided under Section 19.11(f) of the plan, which authorized enhanced pension benefits for plan participants "whose employment with [an Anheuser-Busch company] is involuntarily terminated within three (3) years after [a] Change in Control."   The district court held that the plaintiffs had not been "involuntarily terminated" within the meaning of Section 19.11(f) because they secured employment with a successor corporation.   On appeal, the plaintiffs contend that the district court misinterpreted the key provisions of the section and ask us to overturn the resulting denial of benefits.   For the reasons set out below, we conclude that the district court's reading of Section 19.11(f) of the plan was flawed and reverse.

**FACTUAL AND PROCEDURAL BACKGROUND**

The plaintiffs are former salaried employees of the Metal Container Corporation, a subsidiary of defendant Anheuser-Busch that manufactured aluminum beverage containers for Anheuser-Busch.   While employed by Metal Container, each plaintiff participated in the Anheuser-Busch Pension Plan, a qualifying defined-benefits plan for ERISA purposes.   *See Adams v. Anheuser-Busch Cos., Inc.*, 917 F. Supp. 2d 697, 701 (S.D. Ohio 2013).   The plan was amended in 2000 to add a "change in control" provision in Section 19.11(f), which provided that in the event of a change in control, the retirement benefits of a plan participant "whose

employment with the Controlled Group[1] is involuntarily terminated within three (3) years after the Change in Control shall be determined by taking into account an additional five (5) years of Credited Service and . . . an additional five (5) years of age." This amendment to the plaintiffs' retirement fund was apparently not motivated by sheer largesse on the part of Anheuser-Busch but came on the heels of management's recognition that the company's retirement plan was over-funded and might represent an attractive source of funds for a potential acquirer.

Indeed, in November 2008, InBev N.V., a Belgian corporation, acquired Anheuser-Busch, including its subsidiary Metal Container, in a hostile takeover. *Adams*, 917 F. Supp. 2d at 701. The parties agree that this acquisition constituted a "change in control" of Anheuser-Busch for purposes of Section 19. The plaintiffs continued working for Metal Container through September 30, 2009, and the parties agree that through that date, the plaintiffs were still employees of Anheuser-Busch's Controlled Group for purposes of ERISA. On October 1, 2009, however, InBev spun off four of the Metal Container plants in a sale to the Ball Corporation, under an agreement that the plaintiffs would become employees of Ball and cease to be participants in the Anheuser-Busch ERISA plan, although they would have similar pension benefits at Ball. *Adams*, 917 F. Supp. 2d at 701. There is no dispute that once Ball purchased Metal Container, the plaintiffs were no longer employed by a member of the Controlled Group of the Anheuser-Busch companies.

As a result of the change in their employment, the plaintiffs made claims to the Anheuser-Busch pension-plan administrator for recalculation of their future Anheuser-Busch retirement benefits under Section 19.11(f) of Anheuser-Busch's ERISA plan. They contended that because their employment with an Anheuser-Busch-affiliated Controlled Group company

---

[1]ERISA provides that "all employees of . . . businesses . . . which are under common control shall be treated as employed by a single employer." 29 U.S.C. § 1301(b)(1). In addition, the Act indicates that the regulations relating to that provision "shall be consistent and coextensive with" the Treasury Department regulations enacted under 26 U.S.C. § 414(c). See 29 U.S.C. § 1301(a)(14)(B). Those Treasury Department regulations define "controlled group" as "any group of corporations which is . . . (A) A parent-subsidiary controlled group . . . (B) A brother-sister controlled group . . . (C) A combined group . . . or (D) A life insurance controlled group." 26 C.F.R. § 1.1563-1, Treas. Reg. § 1563-1; *see also* 26 U.S.C. § 1563. In the context of the pension plan at issue in this case, "Controlled Group" refers to "[t]he controlled group of corporations, trades and businesses (within the meaning of sections 414(b) and (c) of the Code) of which the Company is a part, as determined from time to time." In essence, the controlled group in this case was the original "family" of Anheuser-Busch companies, prior to the hostile takeover by InBev N.V.

ended within three years of a change in control, they were entitled to enhanced benefits from Anheuser-Busch at the time of their retirement, regardless of the fact that Ball guaranteed the plaintiffs continued employment with substantially similar salary and benefits. *Adams*, 917 F. Supp. 2d at 701. The plaintiffs were notified on December 23, 2009, that their claims were denied because they had accepted employment with Ball and, therefore, had never experienced a period of unemployment. *Id.* The plaintiffs appealed the denial. On June 17, 2010, the Anheuser-Busch Pension Plans Appeals Committee denied the appeal.

The plaintiffs then filed suit in district court, asserting a claim under 29 U.S.C. § 1132(a)(1)(B) for enhanced retirement benefits and a claim under 29 U.S.C. § 1132(a)(2) for breach of fiduciary duty. The district court granted the defendants' motion to dismiss the plaintiffs' claims for breach of fiduciary duty and for benefits against defendants InBev and Jeff Karrenbrock. Initially, the district court permitted the plaintiffs to proceed on their claim for benefits against Anheuser-Busch, its ERISA plan, and the Pension Plan Appeals Committee, but ultimately the court upheld the administrator's decision denying the claim and entered judgment for the defendants on the administrative record. In reaching this conclusion, the district court held that the plan language at issue was ambiguous and, applying an arbitrary and capricious standard of review, ruled that the plan administrator's decision was reasonable. This appeal followed.

## DISCUSSION

"[I]n determining whether benefits [are] due under the Plan, the starting point is the language of the Plan itself." *Farhner v. United Transp. Union Discipline Income Protection Program*, 645 F.3d 338, 343 (6th Cir. 2011). As noted above, Section 19.11(f) of the Anheuser-Busch plan states that, in the event of a "change in control," the retirement benefits of a plan participant "whose employment with the Controlled Group is involuntarily terminated within three (3) years after the Change in Control shall be determined by taking into account an additional five (5) years of Credited Service and . . . an additional five (5) years of age." In this case, the administrator concluded that "Section 19.11(f) was intended to provide an enhanced benefit to participants who suffer an actual termination or loss of employment." The district

court concluded both that the language of Section 19.11(f) was ambiguous and that the administrator's interpretation was reasonable:

> [T]his interpretation views "with the Controlled Group" as simply clarifying that it is the Controlled Group position which an employee has to lose in order to qualify for benefits under Section 19.11(f), as opposed to being terminated from some other job with a non-Controlled Group employer during the three-year period. Under this interpretation, termination of an employment relationship with the Controlled Group alone is not sufficient to constitute a termination of employment.

*Adams*, 917 F. Supp. 2d at 711-12. The district court did not explain what it meant by "terminated from some other job with a non-Controlled Group employer," nor did it suggest that this case presented that type of situation. *See id.*

The scope of the parties' disagreement is narrow: they dispute only the meaning of the phrase "involuntarily terminated." The defendants argue "that the common understanding of the phrase 'involuntarily terminated' requires an actual job loss, and that the plaintiffs' jobs were not 'involuntarily terminated' because [the plaintiffs] continued to work uninterrupted in the same positions with the purchaser of Metal Container." *Adams*, 917 F. Supp. 2d at 711. In contrast, the plaintiffs argue that "involuntarily terminated" must be read in the context of the broader phrase, "whose employment with the Controlled Group is involuntarily terminated," and that, when read in that context, its meaning is unambiguous. Specifically, the plaintiffs contend that their employment with Anheuser-Busch's Controlled Group was involuntarily terminated on October 1, 2009, because, although still employed by *someone*, their employment *with the Controlled Group* was terminated, and the termination was "involuntary" because they did not choose it. They argue that the defendants' interpretation of the plan improperly ignores terms, adds an eligibility requirement (job loss), and fails to recognize that the plan is a retirement plan, not a severance or unemployment policy. As they note in their brief on appeal, "Section 19.11(f) is not designed to ameliorate the loss of pay if a participant becomes unemployed, but instead provides a substitute for the lost opportunity to earn service and age credit toward retirement under the Plan, the very thing that was lost by the [plaintiffs] when they were terminated from the Controlled Group."

Whether plan language is ambiguous is a legal question that we review *de novo*. *Wulf v. Quantum Chem. Corp.*, 26 F.3d 1368, 1376 (6th Cir. 1994) (citing *Boyer v. Douglas Components Corp.*, 986 F.2d 999, 1003 (6th Cir.1993)). If the plan's terms are unambiguous, the administrator must give effect to them according to their plain meaning. *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 556 (6th Cir. 1998). Because "the administrator must adhere to the plain meaning of its language as it would be construed by an ordinary person," *Korach v. Zurich Am. Inc. Co.*, 587 F.3d 323, 332 (6th Cir. 2009), an interpretation of the plan contrary to its plain language will be arbitrary and capricious. Moreover, extrinsic evidence may not be used "to create an ambiguity" where none exists. *United States v. Donovan*, 348 F.3d 509, 512 (6th Cir. 2003). Thus, any ambiguity that invites an exercise of discretion "must be 'apparent on the face of the contract.'" *Donovan*, 348 F.3d at 512 (quoting *Schachner v. Blue Cross & Blue Shield of Ohio*, 77 F.3d 889, 893 (6th Cir. 1996)). The mere fact that parties propose competing interpretations of language in a Plan "does not dictate a finding that the provision is ambiguous." *Shelby Cnty. Health Care Corp. v. The Majestic Star Casino LLC Grp. Health Benefit Plan*, 581 F.3d 355, 370 (6th Cir. 2009). Rather, "the alternative interpretation . . . 'must be a plausible one.'" *Id.* (quoting *Zirnhelt v. Mich. Consol. Gas Co.*, 526 F.3d 282, 287 (6th Cir. 2008)). Here, a careful reading of the plan language demonstrates that the plaintiffs' interpretation of Section 19.11(f) is the only plausible interpretation.

The plan itself does not define "involuntarily terminated." When the terms of an ERISA plan are undefined, traditional principles of contract interpretation require a plan administrator to "interpret the provisions [of the plan] according to their plain meaning in an ordinary and popular sense." *Williams v. Int'l Paper Co.*, 227 F.3d 706, 711 (6th Cir. 2000); *see, e.g.*, *Kovach*, 587 F.3d at 333 (applying the dictionary definition of "accidental" to determine its ordinary meaning). Webster's Dictionary defines "involuntary" as "done contrary to or without choice"; "compulsory"; "not subject to control of the will." Webster's New Collegiate Dictionary (1975). "Terminate" means "to bring to an end." *Id.* Thus, when something that belongs to someone "is involuntarily terminated," it ends either without the consent of the person to whom the thing belonged or contrary to that person's will.

As the plaintiffs point out, the phrase "involuntarily terminated" has meaning only when it is considered in light of the item it modifies. Excised from the rest of the text in Section

19.11(f), "involuntarily terminated" is an adjectival phrase that could describe, among other things, a person who is fired from a job, a marriage that one spouse seeks to end by filing for divorce, a lawsuit that a court dismisses against a plaintiff's wishes, custody rights that a court terminates without the parents' consent, or possession of a house or car that a bank seizes when a person defaults on a loan. In Section 19.11(f), the adjectival phrase "involuntarily terminated" describes "employment." In fact, it describes a specific *type* of employment: "employment *with the Controlled Group*." It is only because of the phrase "employment with the Controlled Group" that the reader knows that "involuntarily terminated" does not describe a marriage, a lawsuit, parental rights, or property rights. Thus, the phrase "involuntarily terminated" cannot be interpreted in isolation from the full phrase of which it is a part: "whose employment with the Controlled Group is involuntarily terminated."

Given the fact that "involuntarily terminated" has meaning only when the thing that is being involuntarily terminated is identified, and given that the phrase at issue in Section 19.11(f) identifies the thing being terminated as "employment with the Controlled Group," it is clear that when each term in the provision is understood according to its ordinary meaning, and no term is ignored, eligibility for enhanced pension benefits pursuant to Section 19.11(f) requires satisfaction of five elements: (1) that the recipient be a plan participant (2) whose employment with the Controlled Group (3) is involuntarily terminated (4) within three years after (5) a change in control.

The plaintiffs satisfy each of these elements: (1) the plaintiffs were plan participants (2) whose employment with the Controlled Group (specifically, Metal Container) (3) ended when Ball acquired Metal Container without the plaintiffs' consent and for reasons beyond the plaintiffs' control (4) on October 1, 2009, which was less than three years after (5) InBev acquired Anheuser-Busch on November 18, 2008, an event which constituted a change in control. Thus, when each of the terms in Section 19.11(f) is given its ordinary meaning, the phrase "whose employment with the Controlled Group is involuntarily terminated" is unambiguous and has only one plausible interpretation. It requires only that the individual's employment with the Controlled Group be involuntarily terminated, not that the individual experience a job loss or some otherwise undefined period of unemployment. Applying that provision to this case, we conclude that the plaintiffs' employment with the Controlled Group

was "involuntarily terminated" when Anheuser-Busch sold Metal Container to Ball and the plaintiffs became Ball employees.  The plan administrator's decision to the contrary was therefore arbitrary and capricious.

On appeal, the defendants devote a good deal of argument to a rehash of extrinsic evidence in the administrative record that they say supports the district court's determination that the language in Section 19.11(f) is ambiguous and the court's interpretation of the provision in their favor.  Because we hold that the language at issue is not ambiguous, we need not address that argument here.

## CONCLUSION

For the reasons set out above, we conclude that the district court erred in upholding the plan administrator's interpretation of Anheuser-Busch's pension-benefit plan provision at issue in this case.  When each term in Section 19.11(f) is read in light of its ordinary meaning, and no term is rendered superfluous, the provision's meaning is susceptible of only one interpretation and is, therefore, unambiguous.  Accordingly, we REVERSE the judgment of the district court and REMAND the case for entry of judgment in favor of the plaintiffs.