SUTTON, Circuit Judge,
dissenting.
Robert Johnston worked for thirty years at Dow Chemical and at a joint venture between Dow and DuPont (which goes by the name of DDE). His service started with a sixteen-year stint at Dow, led to a nine-year interlude at DDE, and ended with a six-year stint at Dow. That made Johnston eligible for two pensions, one from Dow, one from DDE. Both retirement plans provided for defined-benefit pensions, entitling eligible retirees to a fixed monthly payment premised on the employee’s years of service and final average salary. No one had any trouble figuring out how to calculate Johnston’s DDE pension, which included his nine years of service with DDE and his initial sixteen years of service with Dow. But they did have a question about how to calculate his Dow pension: Should Johnston’s sixteen years of service at Dow before his work at DDE count toward the years-of-service component of his Dow pension? If so, Johnston is entitled to about $5,000 more per year from the Dow pension.
Federal law has a tried and true mechanism for resolving such disputes. Under ERISA, all pension plans must be in writing (to permit employees to prepare for retirement), all plan administrators must adhere to the written terms of the plan (to protect employees’ reliance interests), and companies may not lower pension benefits mid-stream (to safeguard both sets of expectations). The written terms of the Dow plan answer today’s question as clearly as any pension plan can: Johnston is entitled to count his first sixteen years of Dow service and thus to $5,000 more per year under the Dow pension plan. Because my colleagues permit what ERISA precludes — a reduction in Johnston’s pension benefit unauthorized by the plan — I must respectfully dissent.
ERISA requires companies to administer employee benefit plans in accordance with a “written instrument,” such as a pension plan. 29 U.S.C. § 1102(a)(1). The terms of a plan may give the company’s plan administrator discretion to resolve ambiguities in the plan. If so, arbitrary- and-capricious review applies to the administrator’s resolution of any ambiguities. But that latitude still requires the administrator to base any denial of benefits on a “plausible interpretation” of the plan. Adams v. Anheuser-Busch Cos., 758 F.3d 743, 748 (6th Cir. 2014).
*412 This case begins, and largely ends, with § 9.6(b)(1)(B) of Dow’s plan. “Notwithstanding any provision of the Plan to the contrary,” it says, “Employees who enter the Plan or return to coverage under the Plan from [DDE] shall have their benefits calculated under this clause.” A.R. 1881, Under this clause, the administrator calculates benefits by determining the employee’s hypothetical full benefit based on his combined service with Dow and an affiliated company (here DDE) as if they had always worked at Dow, then multiplying this number by “a fraction, the numerator of which is the Credited Service with the Company [Dow] and the denominator of which is the Credited Service with [Dow] plus the credited, service ,.. with [DDE]." Id. (emphasis added).
In plain, if not everyday, English, § 9.6 tells the administrator to credit Johnston’s pre-DDE service with Dow when calculating his benefits. The provision refers to the employee’s “Credited Service with the Company [Dow]." Everything hinges on the meaning of that phrase, which permits just one straightforward reading. The definition of “Credited Service” under § 9.6 says to “divid[e] [an] Employee’s Hours of Service” by “Location Work Schedule Hours.” A.R, 1804. “Employee” in turn is defined as a “person engaged by the Company.” Id. at 1793. And the “Company” means Dow, not DDE. Id. at 1786; see also supra at 410. Section 9.6 says nothing about disregarding pre-transfer service with Dow that counts toward the affiliate’s pension plan; it refers to all credited service with Dow. Nor is there anything in the plan’s definition of “Credited Service” to that effect, The only permissible reading of “Credited Service with the Company” is that it encompasses all credited service with Dow.
The plan administrators offer no coherent basis for sidestepping this reality. They start by claiming that, when Johnston’s old pension assets were transferred to DDE, his sixteen years of service with Dow became “Credited Service” with DDE, not Dow. That would be a plausible way to write a plan. But it is not a plausible way to read this plan. Neither the plan administrators nor the court points to any language in § 9.6 that allows this reading.
The plan administrators and the court cannot overcome this problem by using extrinsic evidence to supply terms for § 9.6 that are not there. See supra at 405 (“The board has also produced extrinsic evidence that Johnston was, in fact, part of the July 1, 1997 asset transfer.”). ERISA requires the terms of pension plans to be in writing, not in the minds of the company’s witnesses who later supply extrinsic evidence after the fact. Otherwise, the reliance interests protected by ERISA’s in-writing mandate would be severely undercut. Dow’s appeal to extrinsic evidence confirms what the terms of the plan show: Nothing in § 9.6 supports its position.
Section 4.10 does not fill this gap. The district court recognized that “Credited Service with the Company” by its terms includes Johnston’s pre-DDE service. And this court, to its credit, acknowledges the same. See supra at 406. But both courts claim that § 4.10’s alleged prohibition on double counting years of service allowed Dow to alter § 9.6. That approach runs through two red lights.
The first: Section 9.6 begins by prohibiting any such effort: “Notwithstanding any provision of the Plan to the contrary.” If § 4.10 is to the contrary, it cannot be used. And if it is not to the contrary, it is irrelevant. The court insists that “these provisions [are] in conflict.” See supra at 409. But I fail to see how. Section 4 (called Article IV in the plan) does not contain its own “notwithstanding” clause. And nothing *413 in it claims “to supersede any conflicting provision.” See id, at 9.
The second: Section 4.10 nowhere establishes a general prohibition on double counting that can be used to interpret or for that matter override independent sections of the plan. It merely provides a means of accounting for duplicate pension plans when no more specific provision (such as § 9.6) controls: “If a Participant ,,. shall be eligible for a benefit under any [affiliate pension plan] and shall also be eligible for a benefit hereunder based upon the same period of service ..., then the amount of such other benefit received ... shall be deducted from the benefit payable hereunder for such same period of service.” A.R. 1825-26. We know that § 4.10 does not control this pension calculation because no one — not the plan administrator, not the district court, not this court — uses it in calculating Johnston’s pension. No one to this day has used the method for avoiding double-counting that § 4.10 provides. The district court instead used § 4.10 to produce a general principle (to avoid double counting) that it then applied in interpreting the phrase “Credited Service with the Company” (to override § 9.6). That is wishful thinking, not adherence to the written terms of the plan.
For these reasons, it makes no difference whether § 4.10 effects a contemporaneous “amendment” to the plan. See supra at 407-09. The question is not whether the anti-cutback provision applies to § 4.10; it is whether § 4.10 applies at all, or for that matter whether the company has used the provision in calculating Johnston’s pension. At any rate, neither party makes the argument on which the majority appears to rely.
Reliance on general equitable principles — to the apparent end of preventing Johnston from using his first sixteen years of Dow service to calculate two separate pension payments — do not support Dow’s position either. By requiring pension plan administrators to put the terms of the pension in writing and to honor its language, ERISA prohibits protean methods of pension interpretation.
But I doubt Dow’s assessment of the equities anyway. What could be more inequitable to a retiree than changing the terms of a pension plan after he retires? Johnston should have been able to rely on the words of the plan. Plus, Dow had ample reasons, and equitable reasons at that, to write § 9.6 just as it did. It makes considerable sense for a company to promise a generous retirement benefit calculation to induce employees to transfer to a new joint venture. It’s quite possible that employees like Johnston accepted these new assignments in reliance on that promr ise given the risk that DDE’s pension (but not Dow’s) could become underfunded after the venture ended. If the plan administrators and the court think it appropriate to look to extrinsic evidence in this case, they might look to whether Johnston (or others like him) relied on the plan’s language in accepting the transfer.
None of the court’s other rationales justifies these departures from the text. The court assumes that a later amendment to the plan, § 10.46, “must apply” to Johnston, presumably because of that provision’s title: “Transfers from [DDE] Pension and Retirement Plan.” See supra at 403. It then claims a conflict between § 10.46 and § 9.6 by asserting that “each claims to supersede any conflicting provision.” See id. at 8-9, But the conflict is a mirage. Because § 9,6 requires the company to credit Johnston’s pre-DDE service with Dow, and because everyone agrees that doing so results in a larger benefit under § 9.6 than under § 10.46, see id. at 13, § 10.46 cannot apply. Invoking a later amendment to the plan (§ 10.46) to reduce *414 Johnston’s benefit violates ERISA’s anti-cutback provision. See 29 U.S.C. § 1054(g)(1).
At bottom, Johnston wants to count 22.5 years’ service with Dow in the numerator (“Credited Service with the Company”) and 22.5 years’ service with Dow plus 9,3 years’ service with DDE in the denominator (“Credited Service with the Company plus the credited service with [DDE] ”), for a fraction of 22.5/31.8. That’s a straightforward application of § 9.6. Through three stages of review, no one has put forward a plausible interpretation of § 9.6 that supports Dow’s position. No one has put forward a plausible interpretation of § 4.10 that supports Dow and that Dow has used to calculate Johnston’s pension. And no one has put-forward a plausible interpretation of § 10.46 that supports Dow and does not violate ERISA’s anti-cutback provision. Implausible interpretations of pension plans necessarily are arbitrary and capricious interpretations of pension plans. Johnston deserves the extra pension benefit, just as the plan requires. I would reverse.