NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0206n.06

No. 21-3695

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
May 23, 2022
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| LISA ZAHURANEC, | ) |
| Plaintiff-Appellant, | ) |
| | ) |
| v. | ) ON APPEAL FROM UNITED |
| | ) STATES DISTRICT COURT FOR |
| | ) THE NORTHERN DISTRICT OF |
| CIGNA HEALTHCARE, INC., et al., | ) OHIO |
| Defendants-Appellees. | ) |
| | ) |

Before: SILER, BUSH, and MURPHY, Circuit Judges.

SILER, Circuit Judge. Lisa Zahuranec appeals the district court's order granting the motions to dismiss brought by CIGNA Healthcare, Inc., Jessica Breon, R.N., and Rajesh Davda, M.D. For the following reasons, we **AFFIRM**.

## I.

Lisa Zahuranec was an employee of the Horseshoe Casino Cleveland, an entity affiliated with Caesars Entertainment Operating Company, Inc. ("Caesars"). As part of her employment, the Horseshoe Casino Cleveland offered Zahuranec a welfare benefit plan that included health insurance. In mid-2012, Zahuranec started her position and enrolled in the plan, governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). *See* 29 U.S.C. §§ 1001–1461. Caesars self-funded the plan and was the plan administrator. CIGNA Healthcare, Inc. ("CIGNA") processed claims for the plan's health benefits, as the claims administrator.

Early in 2013, Zahuranec began consulting her physician about undergoing bariatric surgery for weight loss intervention. Her physician requested pre-authorization from CIGNA for

the procedure. CIGNA's employees, Jessica Breon, R.N. ("Nurse Breon") and Rajesh Davda, M.D. ("Dr. Davda"), were assigned to review Zahuranec's file. CIGNA denied Zahuranec's request for pre-authorization because bariatric surgery was not covered until at least one year after the policy's effective date. So Zahuranec waited. In mid-2013—a full year after the policy's effective date—Zahuranec's physician submitted another request for pre-authorization. Nurse Breon reviewed the request, and CIGNA again denied coverage. CIGNA indicated that Zahuranec had failed to comply with the policy's requirement that bariatric surgery be "medically necessary." To be covered for bariatric surgery, the policy required the procedure be "medically necessary," as outlined by several criteria. At the time, Zahuranec failed to satisfy one of those criterions, namely, prior participation in a "weight-management program for a minimum of 3 consecutive months."

A few months later, Zahuranec's physician supplemented the medical records and again requested pre-authorization. This time, CIGNA approved Zahuranec for bariatric surgery, despite several deficiencies in her records. For instance, one of the policy's "medical-necessity" criteria for bariatric surgery required Zahuranec to show that "within the previous 6 months" she had undergone a "separate medical evaluation from a physician other than the surgeon recommending surgery," but by the time CIGNA approved the surgery, her most recent evaluation had been performed ten months earlier. Also, because her BMI was below 40.0, Zahuranec was required to show "at least one clinically significant obesity-related ailment (co-morbidity)," yet she hadn't been diagnosed with any. Similarly, the policy required Zahuranec's physician-supervised weight-management program last a "minimum of 3 consecutive months," but Zahuranec's records only showed that she had visited a dietician in February, March, and October.

After CIGNA approved the procedure, Zahuranec underwent bariatric surgery in late-2013. Zahuranec suffered severe complications, allegedly because she was not medically qualified for the procedure. And she claims she never would have undergone the procedure had CIGNA not approved it because she would not have been able to afford the operation. Several years later, in late-2017, Zahuranec filed a medical malpractice suit against the physicians who performed her surgery. *See* Compl., *Zahuranec v. Rogula*, No. CV-17-885085 (Ohio Ct. Com. Pl. Aug. 25, 2017). In mid-2018—on behalf of the plan—CIGNA's third-party administrator filed a Notice of Lien in Zahuranec's state-court action and demanded reimbursement for the costs of the surgery. CIGNA relied on the policy's "Subrogation/Right of Reimbursement" provisions, which granted the plan a subrogation lien and the right to be reimbursed to the extent of "benefits" paid by the plan.

In mid-2019, Zahuranec settled and dismissed her malpractice action. *See* J. Entry, *Zahuranec v. Rogula*, No. CV-17-885085 (Ohio Ct. Com. Pl. June 24, 2019). In response to CIGNA's demands for reimbursement, Zahuranec sued CIGNA in the Cuyahoga County Court of Common Pleas for breach of contract. CIGNA removed the action to the United States District Court for the Northern District of Ohio. Zahuranec amended her complaint to add state-law claims for breach of contract, breach of fiduciary duty, and equitable estoppel against CIGNA and Caesars and for "breach of their duties" against Dr. Davda and Nurse Breon. CIGNA moved to dismiss Zahuranec's first amended complaint. CIGNA argued Zahuranec's claims were expressly preempted by ERISA, pursuant to 29 U.S.C. § 1144(a), and completely preempted by ERISA, pursuant to 29 U.S.C. § 1132(a)(1)(B). The district court partially agreed. The court found that Zahuranec's claims were completely preempted by ERISA—but therefore could not be expressly preempted by it—and denied CIGNA's motion in order to allow Zahuranec to amend her complaint in the language of ERISA.

In her second amended complaint, Zahuranec brought three ERISA claims, mirroring the state-law claims in her first amended complaint. First, Zahuranec brought claims against Caesars and CIGNA under § 1132(a)(1)(B) to "enforce her right[]" not to reimburse the plan. She alleged that Caesars and CIGNA breached the policy when they wrongly approved her procedure, and, therefore, that the plan is not entitled to reimbursement. Second, she brought claims against Caesars, CIGNA, Dr. Davda, and Nurse Breon under § 1132(a)(3) for breach of fiduciary duty. Zahuranec alleged they breached their fiduciary duties by wrongly approving a surgery that did not satisfy the policy's "medical-necessity" criteria for bariatric surgery. Third, Zahuranec bought claims against Caesars and CIGNA under § 1132(a)(3) for equitable estoppel. She alleged Caesars and CIGNA should be estopped from seeking reimbursement because they promised her the surgery was "medically necessary" when it wasn't. As relief, Zahuranec requested a declaratory judgment and equitable relief "determining she is not required to reimburse the plan," plus compensatory and punitive damages.

Early in 2021, the district court dismissed without prejudice Zahuranec's claims against Caesars because Zahuranec had not served Caesars. Shortly after, CIGNA, Dr. Davda, and Nurse Breon moved to dismiss Zahuranec's second amended complaint. The district court granted the motions in full. Zahuranec appeals the district court's order.

## II.

We review de novo a district court's order granting a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Hensley Mfg., Inc. v. ProPride, Inc.*, 579 F.3d 603, 608–09 (6th Cir. 2009). To survive a motion to dismiss, the plaintiff must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In our review, we consider

not only the complaint but also documents incorporated by reference and matters subject to judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). We may affirm the district court's decision on any grounds. *Hensley Mfg.*, 579 F.3d at 609.

**III.**

**A.      Section 1132(a)(1)(B)**

Zahuranec brings her first claim against CIGNA under § 1132(a)(1)(B). That statute provides a participant of an ERISA-governed plan the ability "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Zahuranec asserts that she is "enforce[ing] [her] right under the terms of [her] plan" not to reimburse the plan. She points to the policy's "Subrogation/Right of Reimbursement" provisions as the basis for that right. Those provisions essentially allow the plan to recoup the costs of a procedure when a third party is responsible for the expense. But because her procedure didn't satisfy the policy "medical-necessity" criteria for bariatric surgery, Zahuranec argues, the procedure wouldn't have been a "benefit" in the first place and therefore should not be subject to the policy's "Subrogation/Right of Reimbursement" provisions.

A participant's claim to "enforce [her] rights under the terms of the plan," is essentially an ERISA breach-of-contract claim. *See, e.g.*, *Hutchison v. Fifth Third Bancorp.*, 469 F.3d 583, 588–89 (6th Cir. 2006). But an ERISA breach-of-contract claim is no ordinary breach-of-contract claim. Standards of review are often determinative. If the plan gives an administrator "discretionary authority" to construe the terms of the policy, we review the administrator's interpretation under the deferential arbitrary-and-capricious standard. *Clemons v. Norton Healthcare Inc. Ret. Plan*, 890 F.3d 254, 264 (6th Cir. 2018) (quoting *Firestone Tire & Rubber*

*Co. v. Bruch*, 489 U.S. 101, 115 (1989)).  If, on the other hand, the plan lacks this discretionary authority, we review the administrator's interpretation de novo.  *Wallace v. Oakwood Healthcare, Inc.*, 954 F.3d 879, 889 & n.5 (6th Cir. 2020).  And we review the district court's conclusions on these issues de novo.  *Id* at 889.

The district court did not apply a standard of review to Zahuranec's claim, and the parties do not rely on one.  Because the policy's "Subrogation/Right of Reimbursement" provisions are clear and unambiguous, we may proceed regardless of the standard of review.  *See Clemons*, 890 F.3d at 269.

The policy's "Subrogation/Right of Reimbursement" provisions state:

> If a Participant incurs a Covered Expense for which, in the opinion of the plan or its claim administrator, another party may be responsible or for which the Participant may receive payment as described above:
>
> 1. Subrogation: The plan shall, to the extent permitted by law, be subrogated to all rights, claims or interests that a Participant may have against such party and shall automatically have a lien upon the proceeds of any recovery by a Participant from such party to the extent of any benefits paid under the plan. A Participant or his/her representative shall execute such documents as may be required to secure the plan's subrogation rights.
>
> 2. Right of Reimbursement: The plan is also granted a right of reimbursement from the proceeds of any recovery whether by settlement, judgment, or otherwise. This right of reimbursement is cumulative with and not exclusive of the subrogation right granted in paragraph 1, but only to the extent of the benefits provided by the plan.

To execute these rights, the policy provides:

> By accepting benefits under this plan, a Participant:
>
> • grants a lien and assigns to the plan an amount equal to the benefits paid under the plan against any recovery made by or on behalf of the Participant which is binding on any attorney or other party who represents the Participant whether or not an agent of the Participant or of any insurance company or other financially responsible party against whom a Participant may have a claim provided said attorney, insurance carrier or other party has been notified by the plan or its agents;
>
> • agrees that this lien shall constitute a charge against the proceeds of any recovery and the plan shall be entitled to assert a security interest thereon; [and]

• agrees to hold the proceeds of any recovery in trust for the benefit of the plan to the extent of any payment made by the plan.

From these provisions, we can ascertain three general limitations on the plan's right to pursue a subrogation lien and be reimbursed. First, a participant must have "incur[red] a Covered Expense." Second, a third party must be determined responsible for that expense, or the participant must be able to receive payment for that expense. Third, the plan may only pursue "benefits" "paid under the plan" and "provided by the plan." If all three of these requirements are met, the plan is entitled to pursue its lien and recoup its costs from Zahuranec.

Zahuranec does not dispute the second requirement, that her malpractice settlement encompasses the costs of her bariatric surgery. So the only issue is whether Zahuranec "incur[red] a Covered Expense" and whether the plan "paid" and "provided" her "benefits." We take these questions in order.

### i.      *Did Zahuranec "incur a Covered Expense"?*

Intuitively, before the plan may be reimbursed, Zahuranec must have "incur[red] a Covered Expense." The policy defines "Covered Expenses" as "expenses that 1) are incurred after the person becomes insured for these benefits, and 2) are recommended by a physician and are Medically Necessary for the care and treatment of an Injury or a Sickness, as determined by Cigna." Neither the district court nor the parties addressed this provision. As the policy provides, the plan has a right to pursue a subrogation lien and be reimbursed "[*i*]*f* a Participant incurs a Covered Expense"—which is defined in part as a "Medically Necessary" expense.

Although she never relies on the language of a "Covered Expense," Zahuranec complains of a purported incongruity, which implicates that language. She argues had the plan *denied* her benefits and she sued to recover them, *she* would've been required to prove her surgery was

"Medically Necessary" (thus, a "Covered Expense"), and we would not have rejected her claim solely based on CIGNA's "determination" that the procedure *wasn't* "Medically Necessary"—so shouldn't the same be true for CIGNA's "determination" that it *was*? Zahuranec asserts CIGNA must prove the plan properly granted coverage before it can be reimbursed for the expense.

Zahuranec's argument is based on a fundamental misunderstanding about her claim. While courts will review a plan's decision to deny benefits de novo or under the arbitrary-and-capricious standard, depending on the plan's "discretionary authority" to determine eligibility, s*ee Firestone Tire & Rubber Co.*, 489 U.S. at 109–15, Zahuranec is not seeking to "recover benefits due to [her] under the terms of [her] plan." 29 U.S.C. § 1132(a)(1)(B). She believes she wasn't due benefits at all. Instead, Zahuranec is seeking to enforce her "rights under the terms of [her] plan." *Id.* She claims to have the right to prevent the plan from being reimbursed for the cost of a surgery that does not satisfy the policy's "medical-necessity" criteria for that procedure. The question therefore is not whether CIGNA erred or somehow abused its discretion when it "determined" her surgery was a "Medically Necessary" "Covered Expense," but whether the policy limits the plan's right to be reimbursed based on that determination. And the policy unambiguously does not.

A "Covered Expense" is an expense that is "Medically Necessary . . ., *as determined by Cigna*." A specific procedure's "medical-necessity" criteria are "intended to provide guidance" as part of "[c]overage determinations." But the determination is ultimately a discretionary decision made by the plan's "Medical Director." So while the plan is not obligated to cover surgeries that do not satisfy a procedure's "medical-necessity" criteria, the policy does not prevent the plan from being reimbursed if a participant requests it to do so and the plan "determine[s]" the procedure is "Medically Necessary." *See Clemons*, 890 F.3d at 269 ("Mindful that we are judges—not . . . the

'fairness police'—we ask one question, and one question only: Is the Plan language clear? If it is, we must enforce it, no matter how unfair or bizarre it might seem.").

CIGNA "determined" Zahuranec's bariatric surgery was "Medically Necessary" when it approved her procedure. Zahuranec therefore "incur[red] a Covered Expense" when she underwent bariatric surgery. So far, the first and second requirements are met.

### ii. Did the plan "pay" and "provide" Zahuranec "benefits"?

The central dispute between the parties has always been whether Zahuranec received "benefits" under the policy. Zahuranec argues her medical records did not support a conclusion that her surgery was "medically necessary" under the policy's bariatric-surgery criteria, and so her procedure was not a "benefit." CIGNA argues "benefits" are simply expenses paid for a participant under an insurance policy, irrespective of the policy's coverage guidelines.

The term "benefit" is undefined in Zahuranec's policy. We apply "traditional principles of contract interpretation" when a term of an ERISA plan is undefined. *Adams v. Anheuser-Busch Cos., Inc.*, 758 F.3d 743, 748 (6th Cir. 2014). We determine the meaning of the term by looking to the plain and ordinary meaning of the word. *Id.* (citation omitted).

Under the plain meaning of the word, benefits are expenses paid for a beneficiary through an insurance policy. Black's Law Dictionary defines "benefit," in relevant, part as "[f]inancial assistance that is received from an . . . insurance . . . program . . . in time of sickness, disability, or unemployment." *Benefit*, BLACK'S LAW DICTIONARY (11th ed. 2019). This definition aligns with the policy's surrounding use of the word as something that may be "accept[ed]" and "paid." Conversely, whether a procedure is "medically necessary" under the policy is just a question of coverage. So whether a procedure is "medically necessary" does not determine what a benefit is—only when it's paid.

Zahuranec argues the policy excludes all non-"Medically-Necessary" procedures and so the plan could not have "paid" or "provided" benefits for her bariatric surgery because the procedure did not satisfy the policy's "medical-necessity" criteria. But CIGNA had "determined" Zahuranec's surgery was "Medically Necessary" when it approved the procedure. So the cost of her surgery was not excluded from the policy and was "paid" and "provided" by the plan.

To recap, as alleged in Zahuranec's complaint, after CIGNA determined that Zahuranec's bariatric surgery was "Medically Necessary," Zahuranec (1) underwent bariatric surgery and "incur[red] a Covered Expense," (2) the plan "paid" and "provided" "benefits" for the surgery, and (3) a third party is responsible for the cost. All three requirements under the policy's "Subrogation/Right of Reimbursement" provisions are satisfied. The plan is entitled to pursue its subrogation lien and be reimbursed by Zahuranec. We affirm the district court's dismissal of this claim.

### B.      Breach of Fiduciary Duty

In her second amended complaint, Zahuranec also brought claims against CIGNA, Dr. Davda, and Nurse Breon for breach of their fiduciary duties under § 1132(a)(3). In addition to her claim against CIGNA, it is unclear whether Zahuranec also appeals her fiduciary-duty claims against Dr. Davda and Nurse Breon. She therefore waived review of these claims. *See Rose v. State Farm Fire & Cas. Co.*, 766 F.3d 532, 540 (6th Cir. 2014). But, regardless, Zahuranec attributes the same misrepresentation to CIGNA, Dr. Davda, and Nurse Breon—that her bariatric surgery was "medically necessary." Zahuranec maintains the decision to approve her surgery amounted to a material misrepresentation that the procedure was "medically necessary." She claims she would not have undergone bariatric surgery without CIGNA's approval of the procedure as "medically necessary."

ERISA governs employee benefit programs "to promote the interests of employees and their beneficiaries[.]" *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90 (1983). ERISA accomplishes this purpose by imposing "strict fiduciary standards of care in the administration of all aspects of [benefit] plans[.]" *Akers v. Palmer*, 71 F.3d 226, 229 (6th Cir. 1995) (citation omitted). To uphold these duties, we have recognized an ERISA breach-of-fiduciary claim under § 1132(a)(3), where a fiduciary provides a participant with "materially misleading information." *James v. Pirelli Armstrong Tire Corp.*, 305 F.3d 439, 449 (6th Cir. 2002). To establish a fiduciary-duty claim based on a misrepresentation, the plaintiff must allege (1) the defendant was acting in a fiduciary capacity when it made the representations, (2) the representations were false and material, and (3) the plaintiff reasonably relied on those misrepresentations to her detriment. *See id.*; *see also Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 434–35 (6th Cir. 2006). A material misrepresentation is a false statement that is substantially likely to "mislead a reasonable employee in making an adequately informed decision in pursuing . . . benefits to which she may be entitled." *Krohn v. Huron Mem. Hosp.*, 173 F.3d 542, 547 (6th Cir. 1999). "A fiduciary breaches his duty by providing plan participants with materially misleading information, 'regardless of whether the fiduciary's statements or omissions were made negligently or intentionally.'" *James*, 305 F.3d at 449 (citation omitted).

Whether Zahuranec's bariatric surgery was "medically necessary" was just a question of coverage. The policy defines "Medical Necessity" in order to determine when the plan will cover a procedure, but the plan warns beneficiaries that "[c]overage [p]olicies are not recommendations for treatment and should never be used as treatment guidelines." Based on the policy language, when CIGNA approved Zahuranec's surgery, it at most represented the procedure would be paid. Zahuranec did not detrimentally rely on that representation, nor was it truly false; the plan paid for

her surgery. Notably, had CIGNA made a so-called "mixed eligibility[-]and[-]treatment decision[],"—acting as, say, the claims administrator *and* the employer of Zahuranec's treating physician—it would not have been performing a fiduciary function under ERISA in the first place. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 218–21 (2004) (citing *Pegram v. Herdrich*, 530 U.S. 211, 229 (2000)). Zahuranec implicitly accepts this distinction, herself. She claims she would not have undergone bariatric surgery without CIGNA's approval, not because CIGNA made a treatment decision, but because the procedure was too expensive otherwise. Zahuranec did not detrimentally rely on CIGNA's decision to approve her for bariatric surgery because the plan paid for that procedure. We affirm the district court's decision to dismiss this claim.

### C. Equitable Estoppel

Zahuranec lastly brought an equitable estoppel claim against CIGNA under § 1132(a)(3). She requests we estop CIGNA from pursuing its subrogation lien and seeking reimbursement on behalf of the plan because CIGNA "promise[d]" that Zahuranec's surgery was "Medically Necessary" when it wasn't. To establish a claim for equitable estoppel under ERISA, a plaintiff must allege (1) conduct or language amounting a representation of material fact; (2) the party to be estopped was aware of the true facts; (3) the party to be estopped intended the representation be acted on, or the party asserting the claim reasonably believed the party to be estopped so intended; (4) the party asserting the claim was unaware of the true facts; and (5) the party asserting the claim reasonably relied on the representation to her detriment. *Moore*, 458 F.3d at 428 (quoting *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 403 (6th Cir. 1998)).

Once again, Zahuranec failed to allege she detrimentally relied on CIGNA's "promise" that her bariatric surgery was "Medically Necessary." *See Deschamps v. Bridgestone Ams., Inc. Salaried Emps. Ret. Plan*, 840 F.3d 267, 279 (6th Cir. 2016) (adopting the "reliance"-analysis from

an equitable estoppel claim for a fiduciary-duty claim). When CIGNA approved Zahuranec's surgery, it represented only that her procedure was covered under the policy. Zahuranec underwent bariatric surgery, and the plan paid for her procedure. Equity does not demand we preclude CIGNA from pursuing the plan's right to be reimbursed for a procedure Zahuranec requested, CIGNA approved, and the plan paid. We affirm the district court's decision to dismiss this claim.

## CONCLUSION

For one central reason, we **AFFIRM** the district court: the plan was not Zahuranec's physician. *Cf. Pegram*, 530 U.S. at 236 ("ERISA was not enacted out of concern that physicians were too poor to be sued[.]").